Matthew R. Orr, Bar No. 209675
  morr@calljensen.com
William P. Cole, Bar No. 186772
  wcole@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

Attorneys for Defendant Bowmar Nutrition, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER PRODUCTS ASSOCIATION, INC., a Washington, D.C. nonprofit corporation, on behalf of the general public,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>BOWMAR NUTRITION, LLC, an Iowa limited liability company,<br><br>　　　　Defendant. | Case No.  3:21-cv-00596-W-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:  June 7, 2021<br>Hon. Thomas J. Whelan<br><br>Complaint Filed:  April 6, 2021<br>Trial Date:　　　None Set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ....................................................................................................... 1

III. LEGAL ARGUMENT ............................................................................................... 2

    A. Standards on Motion to Dismiss .................................................................... 2

    B. CPA Lacks Standing to Bring UCL or FAL Claims (Counts 1 – 4) ............. 3

    C. CPA Lacks Article III Standing (Counts 1 – 5) ............................................ 4

    D. All of CPA's Claims Fail Because the FAC Does Not Establish Testing Per FDA Requirements (Counts 1-5) ................................. 6

IV. CONCLUSION ......................................................................................................... 8

BOW03-01:3024608_1:4-28-21

- i -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page

Federal Cases

*American Immigration Lawyers Ass'n v. Reno*,
  18 F.Supp.2d 38 (D.D.C. 1998) ................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................2, 3

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ....................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................3

*Brauner v. Musclepharm Corp.*,
  No. CV 14-8869 FMO (AGRx), 2015 WL 4747941
  (C.D. Cal. August 11, 2015) .....................................................................................7

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ..................................................................................3

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*,
  452 F. Supp. 2d 924 (N.D. Cal. 2006) ..................................................................4, 5

*Hunt v. Wash. State Apple Adver. Com'n*,
  432 U.S. 333 (1977) .................................................................................................4

*Jerome's Furniture Warehouse v. Ashley Furniture Industries, Inc.*,
  No. 20CV1765-GPC, 2021 WL 1541649 (S.D. Cal. Apr. 20, 2021) ........................8

*Liou v. Organifi, LLC*,
  491 F.Supp.3d 740 (S.D. Cal. 2020) .........................................................................5

*Rubio v. Orgain, Inc.*,
  No. EDCV 18-2237-MWF (SHKx), 2019 WL 1578379
  (C.D. Cal. Mar. 5, 2019) ......................................................................................7, 8

*Vess v. Ciba-Geigy Corp., U.S.A.*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................8

*Vital v. One World Company, LLC*,
  No. SACV1200314CJCMLGX, 2012 WL 13029487
  (C.D. Cal., Nov. 30, 2012) ...................................................................................6, 7

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ..................................................................................2

State Cases

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*,
  46 Cal.4th 993 (2009) ..........................................................................................3, 4

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011) ..........................................................................................3, 4

*Peterson v. Cellco P'Ship*,
  164 Cal.App.4th 1583 (2008) ...................................................................................5

*Shaeffer v. Califia Farms, LLC*,
  44 Cal.App.5th 1125 (2020) .....................................................................................3

# TABLE OF AUTHORITIES (con't)

Page

**Federal Statutes**

21 U.S.C. § 343(q) ........................................................................................................ 7
21 U.S.C. § 343(q) and 343(r) ...................................................................................... 7
21 U.S.C. § 343(q)(1)(D) .............................................................................................. 6
21 U.S.C. § 343(r) ..................................................................................................... 6, 7
21 U.S.C. § 343-1(a)(4) ................................................................................................ 7
21 U.S.C. § 343-1(a)(5) ................................................................................................ 7
Article III of the United States Constitution ............................................................. 4, 5

**State Statutes**

Bus. & Prof. Code § 17203 ........................................................................................... 3
Code of Civ. Proc. § 382 .............................................................................................. 3

**Federal Rules**

Fed. R. Civ. P. 9 ........................................................................................................... 7
Fed. R. Civ. P. 9(b) ...................................................................................................... 7
Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2
Fed. R. Civ. P. 23 ......................................................................................................... 4

**Federal Regulations**

21 C.F.R. § 101.9(g) ................................................................................................... 13
21 C.F.R. § 101.9(g)(2) ......................................................................................... 11, 15

## I. INTRODUCTION

Like Rip Van Winkle, Plaintiff's Complaint appears to have ambled down from the Catskill Mountains after a decades-long nap. Plaintiff attempts to bring a "private attorney general" suit under California's Unfair Competition Law many years after Proposition 64 abolished such cases. This suit is frivolous.

Plaintiff Consumer Products Association, Inc. ("CPA") purports to be a nonprofit "advocacy" organization engaging in "educational" activities and "public interest litigation." CPA alleges it received "reports" that Defendant's protein food products are falsely labeled, so CPA decided to test some of the products for protein and other nutrient content levels. Alleging false advertising, CPA purports to bring this suit not as a class action but "on behalf of the general public."

In 2004, however, California eliminated "private attorney general" actions under both the Unfair Competition Law (UCL) and the False Advertising Law (FAL). At the same time, California also eliminated "representative" UCL and FAL actions. CPA's UCL and FAC claims must be dismissed.

The Court also should dismiss CPA's unjust enrichment claim. CPA states no claim for unjust enrichment and also lacks Article III standing.

Finally, all of CPA's claims are preempted by federal law, as CPA's product testing did not comply with the FDA's mandatory protocols.

## II. BACKGROUND

On April 6, 2021, CPA filed its Complaint. (Doc. 1.) The next day, CPA filed its First Amended Complaint ("FAC"). (Doc. 3.)

CPA alleges it is a "nonprofit corporation" engaged in consumer "education" and "advocacy." (FAC ¶¶ 6-7.) CPA supposedly was founded to "educate consumers on the accuracy of nutritional label and marketing claims of consumer products" and "to advocate for accuracy and transparency in food labelling and marketing." (*Id.* ¶ 7.) CPA "also engages in public interest litigation relating to false, deceptive, and misleading nutritional label and marketing claims." (*Id.* ¶ 7.) "CPA also tests individual food

products to verify that nutritional label and marketing claims about the contents of those food products are accurate." (*Id.* ¶ 8.)

Defendant manufactures "various powders, bars, frosting, nut spreads, and snacks containing or derived from whey protein isolate." (*Id.* ¶ 2.) CPA alleges it received "reports" that Defendant's product labels made false nutritional claims. (*Id.* ¶ 9.) CPA alleges it decided to procure testing of the nutrient content of some of Defendant's products, and that the test results indicated several products contained less protein than stated on the labels. (*Id.* ¶¶ 9, 29.) Based on these allegations, CPA purports to bring UCL, FAL and unjust enrichment claims "on behalf of the general public." (*Id.* p. 1.)

CPA, however, does not allege that it ever purchased any of Defendant's products in reliance on the challenged labeling claims. Instead, CPA alleges that it "was diverted from its ordinary course of business" because it decided to investigate the reports that Defendant's labeling was false, and because it decided to "devote[] resources to testing these Products . . . and in educating the public through the news media, through podcasts, and through its own website" about the allegedly false labels. (*Id.* ¶ 9.)[1]

## III. LEGAL ARGUMENT

### A. Standards on Motion to Dismiss

The court must dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)(quotation marks omitted). In fact, the court need not accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Instead, under Rule 8, a court must assess whether the complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on

---

[1] CPA does not explain how this was a "diversion" from its ordinary course of business, as it alleges its business is to educate the public and pursue public interest litigation.

its face.'" *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citation omitted). The allegations "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B.   CPA Lacks Standing to Bring UCL or FAL Claims (Counts 1 – 4)**

"Before 2004, the UCL allowed 'any person acting for the interests of itself, its members or the general public' to seek restitution or injunctive relief against unfair acts or practices." *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal.4th 993, 1000 (2009) (quoting Cal. Bus. & Prof. Code, former § 17204, added by Stats. 1977, ch. 299, § 1, p. 1202). Thus, "under the former law a plaintiff did not have to show any actual injury, and a representative action brought under the unfair competition law did not have to be brought as a class action." *Id.*

In 2004, however, voters enacted Proposition 64 to eliminate abuses engendered by the broad standing provisions. *Id.* "Proposition 64 amended the unfair competition law to allow private representative claims for relief to be brought only by those persons who satisfied the law's new standing requirements and who complied with Code of Civil Procedure section 382 [California's class action requirements]." *Id.*; *see also* Bus. & Prof. Code § 17203. The law now requires that a UCL or FAL claim may be brought only by a "person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition." Bus. & Prof. Code § 17203 (emphasis); *id.* § 17535; *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011); *Amalgamated Transit*, 46 Cal.4th at 1000. Thus, under both the UCL and FAL, "the plaintiff must show that she 'actual[ly] reli[ed]' on the 'allegedly deceptive or misleading statement' and that it 'was an immediate cause' of her injury." *Shaeffer v. Califia Farms, LLC* 44 Cal.App.5th 1125, 1137 (2020) (citation omitted). This "economic injury requirement is qualitatively

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

more restrictive than federal injury in fact, embracing as it does fewer kinds of injuries[.]" *Kwikset*, 51 Cal.4th at 324.

CPA fails to allege statutory standing for its UCL or FAL claims. CPA does not allege that it actually relied on Defendant's allegedly misleading advertising, let alone that any such actual reliance was the immediate cause of CPA's alleged injury. Instead, CPA alleges that it decided to "devote[] resources" to testing the Products and to "educating the public through the news media, through podcasts, and through its own website[.]" (FAC ¶ 9.) The allegedly false advertising was not the immediate cause of CPA's voluntary choice to test products or "devote resources" to education after receiving "reports" the labels were misleading. (*Id.*) This is the classic example of the type of case Proposition 64 abolished: a "private attorney general" with no personal standing trying to bring a representative action without class allegations.[2] The UCL and FAL claims fail as a matter of law.

### C.  CPA Lacks Article III Standing (Counts 1 – 5)

CPA's lack of statutory standing is dispositive as to the UCL and FAL claims. However, CPA also lacks even Article III standing to bring any claims set forth in the FAC. The standing requirement ensures that federal courts hear only "cases" or "controversies" under Article III of the United States Constitution. An association may invoke "associational standing" only if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to [its] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977); *Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, 452 F. Supp. 2d 924, 933 (N.D. Cal. 2006).

---

[2] Even if CPA had statutory standing (which it does not), it could not sue on behalf of the "general public" but rather would have to adequately allege a class under Fed. R. Civ. P. 23, which it has not done. *See Amalgamated Transit*, 46 Cal.4th at 1000. Thus, any claims on behalf of the "general public" must be dismissed regardless.

The FAC fails to identify a single member of CPA, much less a member who suffered injury in fact. *See* FAC ¶ 7 (alleging only that "CPA has members in a number of states, including California"). This is fatal to associational standing. *American Immigration Lawyers Ass'n v. Reno*, 18 F.Supp.2d 38, 51 (D.D.C. 1998) (holding the plaintiffs failed to plead associational standing, and stating: "Nowhere in their pleadings do the plaintiffs identify one injured person by name, allege that the injured person is a member of one of the plaintiff organizations . . . , or allege facts sufficient to establish harm to that member"); *Coalition,* 452 F. Supp. 2d at 934-935. CPA's failure to allege facts establishing Article III standing also requires dismissal.

### D. CPA Fails to State a Claim for Unjust Enrichment (Count 5)

While the unjust enrichment claim fails for lack of Article III standing, it also fails on the merits. The elements of unjust enrichment are the receipt of a benefit and the unjust retention of the benefit at the expense of another. *Peterson v. Cellco P'Ship*, 164 Cal.App.4th 1583, 1593 (2008); *Liou v. Organifi, LLC*, 491 F.Supp.3d 740, 752 (S.D. Cal. 2020). Unjust enrichment is not a standalone cause of action, but when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). To state such a claim, the plaintiff must allege "that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at 762 (internal quotations and citation omitted); *accord Liou*, 491 F.Supp.3d at 752.

CPA fails to allege facts establishing that it conferred any benefit upon Defendant through mistake, fraud, coercion or request. CPA alleges that Defendant deceived "consumers" and that "consumers" conferred a benefit on Defendant. (FAC, ¶¶ 76-78.) There is no allegation that CPA (a corporation) is a consumer of protein food products. Nor is there any allegation that CPA ever purchased any of Defendant's products through mistake, fraud, coercion or request. In fact, there is no allegation that CPA itself purchased Defendant's products at all; there is only an allegation that CPA "devoted

resources to testing these Products." (FAC, ¶ 9.) But even assuming CPA itself purchased the products to do the testing, CPA admits the reason it did so was because it had received reports the products made false and deceptive labelling claims and it wanted to test the products. Those pleaded facts do not show that CPA conferred any benefit on Defendants through mistake, fraud, coercion or request. The unjust enrichment claim fails.

### D. All of CPA's Claims Fail Because the FAC Does Not Establish Testing Per FDA Requirements (Counts 1-5)

The FAC contains another defect fatal to all of CPA's claims: CPA does not allege facts establishing that the nutrient contents were tested in accordance the FDA's mandated protocols, but instead establishes preemption.

The FDA mandates how the amount of nutrients (such as protein or calcium) contained in a serving of Defendant's products must be labeled; it requires the nutrient amounts contained in a serving to be stated in the familiar black-and-white "Nutrition Facts" panel, and it provides that statements made about nutrients elsewhere on a product's label are regulated as statements that "characterize[] the level of any nutrient" in the food. *See* 21 U.S.C. § 343(q)(1)(D); *see also* 21 U.S.C. § 343(r).

Federal law also specifically regulates how the amount of nutrients per serving is to be sampled and tested. Specifically, the nutrient amount must be determined by preparing a sample consisting "of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot." 21 C.F.R. § 101.9(g)(2). Under Section 101.9(g)(2)'s methodology, "it is impossible to determine whether a company is in compliance with the Food Labeling Rule by testing less than twelve products from twelve different shipping cases" because "if only eleven products are tested, a hypothetical twelfth product could raise the average nutrient content to a sufficient level." *Vital v. One World Company, LLC*, No. SACV1200314CJCMLGX, 2012 WL 13029487, at *5 (C.D. Cal., Nov. 30, 2012).

Accordingly, the 12-sample testing is mandatory and essential to determine compliance with Sections 343(q) and 343(r).

To the extent any other testing methodology is used, "no matter how good the company believes its testing method to be, it will not be in compliance with the Food Labeling Rule if it does not pass the test set forth in [Section] 101.9(g)." *Vital,* 2012 WL 13029487, at *5. Furthermore, the FDCA expressly preempts state laws that differ from the federal laws; the FDCA specifically mandates that no state may establish either directly or indirectly any requirement for nutrition labeling of food that is not *identical* to the requirement of Section 343(q). *See* 21 U.S.C. § 343-1(a)(4)(emphasis added). The statute also preempts any state requirement regarding a nutrient content claim made elsewhere on the label "that is not *identical* to the requirement of Section 343(r)." *See* 21 U.S.C. § 343-1(a)(5)(emphasis added).

Courts have granted motions to dismiss false labeling claims where the plaintiff's allegations reflect noncompliance with Section 101.9(g). *See, e.g., Rubio v. Orgain, Inc.*, No. EDCV 18-2237-MWF (SHKx), 2019 WL 1578379 (C.D. Cal. Mar. 5, 2019); *Brauner v. Musclepharm Corp.*, No. CV 14-8869 FMO (AGRx), 2015 WL 4747941, at *9 (C.D. Cal. August 11, 2015). In *Rubio*, for example, the court explained that where a plaintiff attaches to its pleading test results that do not show testing in compliance with the section 101.9(g), the plaintiff pleads facts demonstrating preemption. *Rubio*, 2019 WL 1578379, at *4.

Here, the FAC contains no facts establishing the testing of the various products was conducted in compliance with the FDA-mandated methodology. To the contrary, the FAC vaguely and generally states the testing was "commissioned by CPA" (FAC ¶ 29) and attaches several certificates of analysis. The certificates of analysis do not show the FDA's mandatory testing protocol was followed.

Furthermore, the FAC does not comply with Rule 9 of the Federal Rules of Civil Procedure, which requires CPA to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b). Rule 9(b) applies to state law causes of

action grounded in fraud, including UCL and FAL claims. *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Jerome's Furniture Warehouse v. Ashley Furniture Industries, Inc.*, No. 20CV1765-GPC, 2021 WL 1541649, at *3 (S.D. Cal. Apr. 20, 2021). To sufficiently plead fraud, CPA must allege with particularity the facts establishing the challenged nutrient contents fell below the statement amounts based on the FDA-mandated methodology. CPA failed to plead any such facts with particularity.

Finally, and more fundamentally, CPA has pled facts "demonstrating preemption." *Rubio*, 2019 WL 1578379, at *4. The testing certificates attached to the FAC show only one sample of the various products was tested, not "a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases[.]" 21 C.F.R. § 101.9(g)(2).

For these additional reasons, the Court should dismiss the FAC.

## IV. CONCLUSION

When Rip Van Winkle arrived back in town, he was confused the local tavern's painting of King George had been replaced with someone he did not recognize (George Washington). The last time a private party could bring a representative, private attorney general suit under the UCL or FAL, Arnold Schwarzenegger was governor. The Court should dismiss the First Amended Complaint in its entirety.

Dated: April 28, 2021

CALL & JENSEN
A Professional Corporation
Matthew R. Orr
William P. Cole

By: */s/ William P. Cole*
     William P. Cole

Attorneys for Defendant Bowmar Nutrition, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2021, I electronically filed the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

*/s/William P. Cole*
William P. Cole