Charles C. Weller (SBN: 207034)
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Consumer Products Association

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER PRODUCTS ASSOCIATION,<br><br>                    *Plaintiff,*<br><br>          vs.<br><br>BOWMAR NUTRITION LLC,<br><br>                    *Defendant.* | Case No. 3:21-cv-00596-W-MDD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hon. Thomas J. Whelan<br><br>Complaint Filed: April 6, 2021<br>Trial Date: None Set |

1

## TABLE OF CONTENTS

2

3    TABLE OF AUTHORITIES ....................................................... iii

4    INTRODUCTION.....................................................................1

5    FACTUAL BACKGROUND .......................................................3

6    STANDARD OF REVIEW .........................................................5

7    ARGUMENT ...........................................................................6

8         I.    CPA has adequately pleaded injury in fact and Article III
               standing. ...................................................................6
9
                A.    CPA has organizational standing because it has
10                    adequately alleged diversion of resources from
                     its core mission. ................................................6
11
                B.    CPA has not brought a "private attorney general" suit. ...9
12
          II.   The unjust enrichment count is adequately pleaded as
13              alternative relief. .......................................................13

14        III.  CPA's claims are not preempted for failure to allege a
               specific testing method. ..............................................15
15
                A.    Bowmar bears the heavy burden of demonstrating
16                    preemption. .....................................................15

17              B.    Consumer protections claims are not preempted
                     simply because a plaintiff has not pleaded testing
18                   methods that only bind the FDA. ...........................16

19              C.    Bowmar's argument would place a higher burden
                     on plaintiffs to show noncompliance than on
20                   Bowmar to show compliance. ................................20

21   CONCLUSION ........................................................................22

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Adkins v. Comcast Corp.,*
No. 16-cv-05969-VC, 2017 WL 3491973 (Aug. 1, 2017 N.D. Cal.) ............... 14

*Altria Group, Inc. v. Good,*
555 U.S. 70 (2008) ........................................................................... 15

*Amavizca v. Nutra Manufacturing, LLC,*
No. 8:20-cv-01324-RGK-MAA,
2020 WL 8837145 (Oct. 20, 2020 C.D. Cal.) ....................................... 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................... 5

*Bates v. Dow Agrosciences, LLC,*
544 U.S. 431 (2005) ........................................................................... 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................... 5

*Bennett v. Spear,*
520 U.S. 154 (1997) ...................................................................... 7, 18

*Bruesewitz v. Wyeth LLC,*
562 U.S. 223 (2011) ..................................................................... 16, 21

*Clay v. Cytosport, Inc.,*
No. 15–cv–165 L(DHB), 2015 WL 5007884 (Aug. 19, 2015 S.D. Cal.).......... 17

*Coleman v. Standard Life Ins. Co.,*
288 F. Supp. 2d 1116 (E.D. Cal. 2003).............................................. 14

*Ctr. for Science in the Public Int. v. Bayer,*
No. 9-05379, 2010 WL 1223232 (Mar. 25, 2010 N.D. Cal.) .............................. 9

*Deras v. Volkswagen Grp. of Am., Inc.,*
No. 17-cv-05452-JST, 2018 WL 2267448 (May 17, 2018 N.D. Cal.)............. 14

*Diamos v. Walmart Inc.,*
No. 2:19-cv-05526-SVW-GJS, 2020 WL 1942322 (Jan. 9, 2020 C.D. Cal.) ... 18

1
2
*Durnford v. MusclePharm Corp.*,
    907 F.3d 595 (9th Cir. 2018) ................................................... 6, 15, 19

3
4
*Eason v. Roman Catholic Bishop of San Diego*,
    414 F. Supp. 3d 1276 (S.D. Cal. 2019) ............................................ 14

5
6
*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................................................... 9

7
8
*Fair Hous. Council v. Roommate.com LLC*,
    666 F.3d 1216 (9th Cir. 2012) ................................................ 8, 9, 10

9
*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ......................................................... 8

10
11
*Friends of the Earth v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) .................................................................... 6

12
13
*Gubala v. CVS Pharmacy, Inc.*,
    No. 14 C 9039, 2016 WL 1019794 (Mar. 15, 2016 N.D. Ill.) ......................... 18

14
15
*Gubala v. HBS International Corp.*,
    2016 WL 2344583 (May 4, 2016 N.D. Ill.) ........................................ 18

16
17
*Hackman v. ONE Brands, LLC*,
    No. 2018-CA-005423 (June 18, 2019 D.C. Super. Ct.) .............................. 18

18
19
*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .......................................................... 7, 9, 10

20
*Hoffman v. Halden*,
    268 F.2d 280 (9th Cir. 1959) ...................................................... 12

21
22
*In re Herbal Supplements Mktg. & Sales Practices Litig.*,
    No. 15-cv-5070, 2017 WL 2215025 (May 19, 2017 N.D. Ill.) ....................... 18

23
24
25
*Jackson-Mau v. Walgreen Co.*,
    No. 1: 18-cv-4868 (FB)(VMS),
    2019 WL 5653757 (Oct. 31, 2019 E.D.N.Y.) ...................................... 18

26
27
*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................. 6

28
*Lusnak v. Bank of Am., N.A.*,
    883 F.3d 1185 (9th Cir. 2018) ..................................................... 15

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) ................................................................. 13

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................................... 5

*Organic Consumers Assoc. v. Sanderson Farms, Inc.*,
    284 F.Supp.3d 1005 (N.D. Cal. 2018) .................................................... 8, 9, 10, 11

*PAE Gov't Servs., Inc., v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir. 2007) ................................................................................. 12

*Project Sentinel v. Evergreen Ridge Apartments*,
    40 F. Supp. 2d 1136 (N.D. Cal. 1999) ..................................................................... 9

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ............................................................................... 11

*Prudential Home Mortg. Co. v. Sup. Ct.*,
    66 Cal. App. 4th 1236 (1998) ................................................................................ 13

*Rubio v. Orgain, Inc.*,
    No. 2:18-CV-02237-MWF (SHKx),
    2019 WL 1578379 (Mar. 5, 2019 C.D. Cal.) ........................................................ 19

*Sherman v. Yahoo! Inc.*,
    No. 13cv0041–GPC–WVG, 2015 WL 5604400 (Sept. 23, 2015 S.D. Cal.)..... 11

*Smith v. Allmax Nutrition, Inc.*,
    No. 1:15-cv-00744-SAB, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015).......... 18

*Smith v. Pac. Props. & Develop. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) ................................................................................. 8

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ................................................................................. 20

*United States v. Locke*,
    529 U.S. 89 (2000) ................................................................................................. 15

*Vital v. One World Company, LLC*,
    No. SACV 12–00314–CJC(MLGx),
    2012 WL 13029487 (Nov. 30, 2012 C.D. Cal.) .................................................... 19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wildin v. FCA US LLC*,
   No. 3:17cv-02594-GPC-MDD,
   2018 WL 3032986 (June 19, 2018 S.D. Cal.).......................................... 14

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007).............................................................. 10

**Statutes**

Cal. Bus. & Prof. Code § 17500 .......................................................... 5

Cal. Bus. & Prof. Code § 17200 .......................................................... 5

**Rules**

Fed. R. Civ. Proc. 8(a)(2)............................................................. 5, 14

**Regulations**

21 C.F.R. § 101.9(g)(2)........................................................... passim

**Treatises**

5A Charles Alan Wright and Arthur R. Miller,
   *Federal Practice and Procedure* § 1321 (4th ed. 2020).................................. 12

**Other Authorities**

Food Labeling; General Provisions; Nutrition Labeling; Petitions, Definition of
   Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and
   Cholesterol Content of Food, 58 Fed. Reg. 2302, 2311 (Jan. 1993) ........... 17, 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Consumer Products Association brought suit under California's Unfair Competition Law and False Advertising Law to combat blatant falsehoods in the labelling and advertising of food products sold by Bowmar Nutrition, LLC. Bowmar claims that its protein powders, nut spreads, frostings, and other snacks are "high protein" foods formulated to help people reach weight loss and fitness goals. But in fact, many of these Products contain less than half of the protein stated on the label and in Bowmar's marketing materials. These variances are a violation of federal food labelling requirements and cause for liability under the UCL and FAL.

In an attempt to avoid a reckoning on the merits, Bowmar has brought this motion to dismiss, making three arguments for dismissal of Plaintiff's entire Amended Complaint. The arguments are makeweight and should be rejected.

First, Bowmar fixates on one short phrase in the caption of the Amended Complaint to assert that Plaintiff has brought an impermissible "private attorney general" suit and lacks standing under Article III and the California consumer protection statutes. But that phrase never appears anywhere in the Amended Complaint. Instead, Plaintiff has clearly alleged that it has direct organizational standing based on diversion from its charitable mission by Bowmar's conduct. This has been a viable theory of organizational standing for at least 40 years. Bowmar has simply misunderstood (whether mistakenly or willfully is unclear) CPA's clearly stated standing averments, and attacks a straw man of its own making.

Second, Bowmar asserts that Plaintiff's unjust enrichment claim fails on the merits because it has not alleged Bowmar received benefits unjustly taken from CPA. But the unjust enrichment claim is, on its face, pleaded in the alternative. This claim is brought to preserve CPA's entitlement to equitable relief if discovery reveals that it lacks an adequate remedy at law for Bowmar's violations of the UCL and FAL. Multiple courts, including in this district, have recognized that this is permissible alternative pleading.

Finally, Bowmar argues that Plaintiff's claims are preempted because it has failed to allege testing of Bowmar's Products that followed the method used by the FDA in enforcement actions for failure to comply with labelling requirements. But the testing commissioned by CPA—conducted by independent and reputable labs—is sufficient to create a plausible entitlement to relief, which is all that a plaintiff has to show at this preliminary stage of a case. A federal court in this district, along with many others across the country, has rejected the exact argument Bowmar makes here, all for the same reason: It puts the cart before the horse in requiring dispositive proof of liability at the pleading stage. Moreover, Bowmar fails to mention in its brief that *only* the FDA uses this sampling method for specific compliance purposes. That is, federal law explicitly permits Bowmar to test its own samples to determine regulatory compliance using any alternative method that is reliable. Accepting Bowmar's argument would require the Court to hold that a consumer advocacy plaintiff is held to a higher testing standard to determine compliance than the food manufacturer itself—an absurd outcome.

Bowmar's motion is makeweight: it mischaracterizes the Amended Complaint, fails to cite to directly relevant and binding authority, and misstates

the applicability and effect of federal regulations. The motion should be denied in full.

## FACTUAL BACKGROUND

Plaintiff Consumer Products Association ("CPA") is a nonprofit charitable organization engaged in consumer education and advocacy. Amended Complaint ("AC") ¶¶ 6-7. CPA was founded to "educate consumers on the accuracy of nutritional label and marketing claims of consumer products, including protein supplements and replacement foods, and to advocate for accuracy and transparency in food labelling and marketing." *Id*. ¶ 7. CPA "develops educational programs for those members and for consumers generally, on topics such as how to read nutritional labels and the frequency of inaccurate or deceptive statements in marketing and nutritional claims made for consumer products, including protein supplements and replacement foods." *Id*. ¶ 7. Through independent third-party labs, CPA also "tests individual food products to verify that nutritional label and marketing claims about the contents of those food products are accurate." *Id*. ¶ 8.

CPA's Amended Complaint ("AC") alleges that Defendant Bowmar Nutrition, LLC ("Bowmar") manufactures, formulates, and/or distributes a line of nut-based spreads, frostings, popcorn snacks, bars, and powders (the "Products"). AC ¶ 21. The Products are fortified with whey protein and are specifically formulated and advertised—on the FDA-required "nutritional facts" label, on the

front of the Products' packaging, and on Bowmar's website—as being "high protein" and containing specific grams of protein per serving. AC ¶ 22.

But in fact, CPA's testing of the Products revealed that each serving of the Products contains less than the represented amount of protein. For example: Nut spreads advertised and represented as containing 10 grams of protein per serving actually have between 4.76 and 8.67 grams of protein per serving. A protein bar, advertised and represented as containing 20 grams of protein per bar, actually contains 18.69 grams of protein per bar. Frostings advertised and represented as containing 10 grams of protein per serving actually contain between 4.03 and 5.21 grams of protein per serving. Ranch popcorn snacks advertised and represented as containing 8 grams of protein per serving contain 6.93 grams per serving. And protein powders advertised and represented as containing 22 grams per serving contain no more than between 7.77 and 8.09 grams of protein per serving—"far less than half the represented protein content." AC ¶ 29.

In addition, testing by CPA also reveals gross inaccuracies in other claims made on the nutritional labels of the Products. For example, the nutritional label on Bowmar's High Protein Hazelnut Chocolate Spread states that a serving of the Product contains 170 calories, 50 mg of calcium, and 1.5 g of saturated fat. Testing revealed that in fact, each serving contains 199 calories, 28.6 mg of calcium, and 6.96 g of saturated fat—"material differences for consumers who are watching their weight, seeking to maximize bone density, or trimming saturated fats from their diet." AC ¶ 32.

CPA was "diverted from its ordinary course of business" and "devoted resources to testing these Products … and in educating the public through the news

media, through podcasts, and through its own website about the false and deceptive claims made by Bowmar concerning the protein content (and other falsely advertised nutritional claims) of these Products." *Id*. ¶ 9. Because of this diversion of organizational resources—which would not otherwise have occurred absent these false statements by Bowmar—CPA "has suffered injury in fact and has lost money or property." *Id*.

CPA's Amended Complaint brings substantive claims under all three prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. and the False Advertising Law ("FAL"), *id*. § 17500 *et seq*. AC ¶¶ 40–73.

### STANDARD OF REVIEW

A Rule 12(b) motion to dismiss tests the sufficiency of the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering a motion to dismiss, the Court credits all well-pleaded allegations and draws all reasonable inferences in CPA's favor. *Id*.

To avoid dismissal, a plaintiff must aver in its complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this regard, the pleading standard of Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Factual allegations in the complaint must provide fair notice of the nature of the claim and grounds on which the claim rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). As long as the complaint meets this standard, it need not include the facts necessary to carry the plaintiff's burden, or detailed factual allegations. *Id*. at 555.

"[P]laintiffs are generally not expected to provide evidence in support of their claims at the pleading stage, nor are they required to plead the 'probability' of their entitlement to relief." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018) (citations omitted).

## ARGUMENT

## I.   CPA has adequately pleaded injury in fact and Article III standing.

To establish Article III standing, Plaintiffs must show that they (1) suffered injury (2) traceable to Defendant's false and misleading advertising and labelling statements that is (3) redressable. *See, e.g.*, *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Cases stretching back four decades establish that a nonprofit advocacy organization such as CPA meets this test if another's deceptive statements cause it to divert resources in order to combat those falsehoods.

### A.   CPA has organizational standing because it has adequately alleged diversion of resources from its core mission.

Here, CPA has alleged it is a "nonprofit education, advocacy, and membership organization," whose charitable mission is to "educate consumers on the accuracy of nutritional label and marketing claims of consumer products, including protein supplements and replacement foods," and "advocate for accuracy and transparency in food labelling and marketing." AC ¶ 7. CPA "develops educational programs" for its members "and for consumers generally, on topics such as how to read nutritional labels and the frequency of inaccurate or deceptive statements in marketing and nutritional claims." *Id*. It also "tests

individual food products to verify that nutritional label and marketing claims about the contents of those food products are accurate." *Id*. ¶ 8.

Here, CPA alleges that it "was diverted from its ordinary course of business by reports that Bowmar's Products made marketing and nutritional labelling claims that were false and deceptive," including that these Products contained far less protein than was stated on the nutritional label, the front label, and on Bowmar's website. *Id*. ¶ 9. Testing revealed that these allegations were true, among other "gross inaccuracies" on the labelling. *Id*. ¶¶ 22–33. CPA was thus "diverted from its ordinary course of business" and was forced to "devote[] resources to testing these Products … and in educating the public through" various media, including communiques to members, website notices, and podcasts, "about the false and deceptive claims made by Bowmar." *Id*. ¶ 9. In this way, CPA "has lost money or property." *Id*. *See also id*. ¶¶ 41, 50, 59, and 68 (alleging that "[a]s a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions.").

This is more than sufficient to carry CPA's burden to plead injury in fact, which is "relatively modest at this stage of the litigation." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). More than four decades ago, the Supreme Court recognized in *Havens Realty Corp. v. Coleman* that a nonprofit organization has a legally protected interest to pursue its charitable mission. 455 U.S. 363 (1982). The *Havens* plaintiff, a housing rights association, operated a housing counseling service and investigated housing discrimination complaints. *See id.* at 368. The Court observed that "injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback

to the organization's abstract social interests." *Id.* at 379. When an organization diverts its resources to "identify and counteract" unlawful activity that frustrates its mission, resulting in "consequential drain on the organization's resources," there can be "no question that organization has suffered an injury in fact" sufficient "to warrant … invocation of federal-court jurisdiction." *Id.* at 378-79.

The Ninth Circuit has, in the recent past, reaffirmed the viability of this form of organizational standing. *See, e.g.*, *Fair Hous. Council v. Roommate.com LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (allegations that advocacy and nonprofit organizations "investigated … alleged violations and, in response, started new education and outreach campaigns targeted at discriminatory roommate advertising," which caused them "to divert resources independent of litigation costs and frustrated their central mission," were sufficient to establish Article III standing) (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)); *Smith v. Pac. Props. & Develop. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) ("[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question.").

And recently, a federal district court in this state denied a motion to dismiss claims brought under the UCL and FAL, where several nonprofit groups alleged diversion of organizational resources to combat a chicken processor's allegedly deceptive labelling and advertising claims. *See Organic Consumers Assoc. v. Sanderson Farms, Inc.*, 284 F.Supp.3d 1005, 1011 (N.D. Cal. 2018). Many of the standing averments in that case closely resembled those advanced by CPA here. *See id.* (injury in fact adequately pleaded where deceptive statements prompted

consumer organization to "conduct[] research into Sanderson's farming practices and advertising, prepare[] internal memoranda, [and] conduct[] strategy meetings," which caused it to "divert resources and staff time away from its policy and consumer education work on other issues").

This is not a case where the plaintiff has failed to allege that it diverted resources in response to Bowmar's false advertising, *see Ctr. for Science in the Public Int. v. Bayer*, No. 9-05379, 2010 WL 1223232 (N.D. Cal. Mar. 25, 2010); or alleged that it diverted resources solely to pursue litigation, *see Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1139 (N.D. Cal. 1999). Instead, here CPA has pleaded injury in fact squarely within the principles stated by *Havens Realty*, *Roommate.com*, and *Sanderson Farms*.

For the reasons stated by the courts in those cases, Bowmar's motion to dismiss for lack of standing should be denied. And even if the Court were to conclude that something essential was lacking in CPA's standing averments, plaintiff should be granted leave to replead its Amended Complaint. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (federal rules require courts to "freely give leave [to amend] when justice so requires," and "[t]his policy is to be applied with extreme liberality").

## B.    CPA has not brought a "private attorney general" suit.

Bowmar, in its motion to dismiss, simply ignores CPA's standing averments, and instead argues that CPA has brought an impermissible "private attorney general" suit under the UCL and FAL, which it alleges were prohibited by the passage of Proposition 64 in 2004. Bowmar argues that CPA's allegation that "it decided to 'devote[] resources' to testing the Products and to 'educating the public

through the news media, through podcasts, and through its own website' … is the classic example of the type of case Proposition 64 abolished: a 'private attorney general' with no personal standing trying to bring a representative action without class allegations." Bowmar Memo. 4.

Regardless of whether Bowman has correctly described the effect of Proposition 64, this argument is irrelevant: CPA hasn't brought a "private attorney general" suit. In fact, the phrase never appears anywhere in the Amended Complaint, nor is there any numbered allegation purporting to bring suit on behalf of anyone or anything but CPA. *See, e.g.*, AC ¶¶ 41, 50, 59, and 68 (alleging that "[a]s a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial ***organizational resources*** away from ***its*** core missions.") (emphasis added). Instead, CPA has brought suit seeking redress of direct injury in fact in the form of organizational resources diverted to combat Bowmar's blatant falsehoods.

As shown above, this is a well-versed form of standing, including for claims brought under the UCL and FAL. *See Havens Realty*, *Roommate.com*, and *Sanderson Farms*, *supra*. Bowmar's moving papers fail to present any argument that CPA's jurisdictional averments are inadequate to plead direct organizational standing. The Court would be justified in declining to consider any arguments to that effect that Bowmar attempts to present in its reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (courts are not obligated to consider arguments first presented in reply briefs).[1]

---

[1] If the Court does consider new arguments from Bowmar in its reply, CPA would request that the Court grant it leave to file a surreply in the interests of

-10-

1
2
3
4
5
6
7
8

Despite nearly a dozen paragraphs in the Amended Complaint describing diversion of organization resources—CPA's successful attempt to adequately plead direct organizational injury—Bowmar appears to have constructed its entire standing argument on the phrase "on behalf of the general public," which appears in the caption of the Amended Complaint. *See* Bowmar Memo. 2 (citing to page one of the Amended Complaint). The problems with Bowmar's reliance on the caption are several.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**_First_**, the phrase is nothing more than a generic description of any nonprofit charitable organization's mission. In fact, the organizational plaintiffs in *Sanderson Farms* used the exact same term in the caption in that case. *See* Dkt. Entry 1 ("Complaint"), *Organic Consumers Assoc. et al. v. Sanderson Farms, Inc.*, No. 3:17-cv-03592 (N.D. Cal.) (filed June 22, 2017); *id*. Dkt Entry 31 ("Amended Complaint") (filed Aug. 23, 2017). But unlike Bowmar, defendant in that case nonetheless recognized that despite the phrase in the caption, plaintiffs' jurisdictional claims rested on direct organizational standing. Sanderson Farms thus sought dismissal claiming those averments were inadequate under *Havens Realty* and its progeny, not by recasting the entire complaint as a private attorney general suit. *See id*. Dkt. Entry Nos. 32, 37. The court in that case denied Sanderson Farms's motion, for the same reasons Bowmar's motion should be denied here.

25
26
27
28

justice. *See Sherman v. Yahoo! Inc*., No. 13cv0041–GPC–WVG, 2015 WL 5604400, at *3 (Sept. 23, 2015 S.D. Cal.) ("A court admitting arguments submitted for the first time in a reply brief should protect the non-moving party against unfair surprises by allowing it an opportunity to respond." (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***Second***, "the caption of an action is only the handle to identify it." *Hoffman v. Halden*, 268 F.2d 280, 303 (9th Cir. 1959), *overruled on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). That is, captions are not allegations. "Although helpful to the district court, the contents of the caption usually are not considered a part of the pleader's statement of the claim." 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1321 (4th ed. 2020). Wright and Miller cite extensive case law to the effect that "the caption is not determinative as to … the district court's … ***subject matter jurisdiction over the claims***." *Id*. (emphasis added).

***Third***, even if there were some shortcoming in the caption that required amendment, as Wright and Miller note this amendment should proceed under Federal Rule of Civil Procedure 15, not by way of a motion to dismiss the entire Amended Complaint. This is because so long as the correct party is identified and served, "a defective caption or even its complete absence is merely a formal error and ***never should be viewed as a fatal defect***, particularly when it can be remedied early in the action." *Id*. (emphasis added).

***Fourth***, even assuming *arguendo* that six words in a caption are sufficient to plead an entire theory of standing not mentioned anywhere else in the Amended Complaint, CPA has also adequately pleaded direct organizational standing in the body of its Amended Complaint. Plaintiffs, after all, are permitted to plead in the alternative, and the Court should deny a motion to dismiss if a plaintiff has standing under any theory presented. *See PAE Gov't Servs., Inc., v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007). So even if the caption of the Amended Complaint is read as presenting some alternative theory of standing, the motion

must be denied, because Bowmar has not presented any argument that CPA lacks direct organizational standing, which is clearly and successfully alleged in the body of the Amended Complaint.

Bowmar asserts that CPA's Amended Complaint is "frivolous" and compares CPA to Rip Van Winkle, awaking to discover a changed legal landscape. Bowmar Memo. 1, 8. But in truth, as regards the law of standing, it's clearly Bowmar that has been napping.

## II. The unjust enrichment count is adequately pleaded as alternative relief.

Bowmar also argues that Count 5, the claim for unjust enrichment, fails on the merits because CPA has not adequately alleged that it (as opposed to consumers generally) conferred a benefit on Bowmar. Again, Bowmar has been led astray by its failure to adequately read and understand the black-and-white words of the Amended Complaint.

In general, a plaintiff may seek equitable relief (such as disgorgement under an unjust enrichment theory) under the UCL and FAL only if it lacks an adequate legal remedy at law. *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016); *Prudential Home Mortg. Co. v. Sup. Ct.*, 66 Cal. App. 4th 1236 (1998). CPA has explicitly pleaded remedies at law on all of its substantive claims. *See* AC ¶¶ 48, 57, 66, and 73.

But district courts in this circuit permit alternative pleading of an equitable remedy such as unjust enrichment in UCL and FAL cases, in the event it is determined after discovery that plaintiff lacks an adequate remedy at law. These courts have permitted alternative pleading of an equitable remedy in UCL and FAL cases because "there is no procedural bar to a federal court plaintiff pleading

alternative remedies." *Wildin v. FCA US LLC*, No. 3:17cv-02594-GPC-MDD, 2018 WL 3032986, at *7 (June 19, 2018 S.D. Cal.). *See also Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276, 1281–82 (S.D. Cal. 2019) (finding plaintiff could pursue alternative equitable remedies under the UCL at the pleading stage); *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *6, *18–*19 (N.D. Cal. May 17, 2018) (same); *Adkins v. Comcast Corp.,* No. 16-cv-05969-VC, 2017 WL 3491973, at *7 (Aug. 1, 2017 N.D. Cal.) ("[T]his Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies [under the UCL and FAL] at the pleading stage.").

That is exactly what CPA has done. Its Amended Complaint, "to the extent necessary, pleads this cause of action [*i.e.*, unjust enrichment] in the alternative." AC ¶ 74. Under Federal Rule of Civil Procedure 8, a plaintiff "need not use particular words to plead in the alternative" as long as "it can be reasonably inferred that this is what [it was] doing." *Coleman v. Standard Life Ins. Co*., 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003) (quoting *Holman v. Indiana,* 211 F.3d 399, 407 (7th Cir.), *cert. denied,* 531 U.S. 880 (2000)). But here, CPA has actually used "particular words" to plead equitable relief in the alternative.

Bowmar's motion should be denied on the ground that CPA is merely pursuing alternative relief if it lacks an adequate remedy at law, which is permissible.

-14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.   CPA's claims are not preempted for failure to allege a specific testing method.**

Finally, Bowmar argues that "CPA does not allege facts establishing that the nutrient contents were tested in accordance the FDA's mandated protocols," purportedly set forth at 21 C.F.R. § 101.9(g)(2). Therefore, Bowmar asserts, CPA's claims are preempted under the federal Food, Drug, and Cosmetics Act (FDCA). Bowmar Memo. 6. The argument rests on faulty premises and should be rejected—as courts in this district (and many others) have already done.

**A.      Bowmar bears the heavy burden of demonstrating preemption.**

To start, preemption clauses must be narrowly construed. *See Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (where a federal law contains an express preemption clause, "it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains."). "The appropriate inquiry [is] whether the purposes and objectives of the federal statute[] ... are consistent with concurrent state regulation." *United States v. Locke*, 529 U.S. 89, 115 (2000). Importantly, where there is a "plausible alternative reading" of an express preemption provision, courts "have a duty to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005).

Moreover, preemption under the FDCA is an affirmative defense. *See Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford*, 907 F.3d at 604 n.8 (quoting *Xechem, Inc. v.*

1
2
3
4

*Bristol-Myers Squibb Co*., 372 F.3d 899, 901 (7th Cir. 2004)). A defendant asserting preemption bears the burden of proving that it applies. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 227 (2011).

**B.   Consumer protections claims are not preempted simply because a plaintiff has not pleaded testing methods that only bind the FDA.**

5
6
7
8
9
10
11

Bowmar cannot meet its heavy burden of showing that CPA's allegations are preempted simply because it has not alleged testing in compliance with Section 101.9(g)(2). The FDA's regulations regarding nutrient content claims state that nutrient analysis for determining compliance with the Food Labelling Rule proceeds as follows:

12
13
14
15
16
17

> The sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot. Unless a particular method of analysis is specified in paragraph (c) of this section composites shall be analyzed by appropriate methods as given in the "Official Methods of Analysis of the AOAC International," ... or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures….

18

21 C.F.R. § 101.9(g)(2).[2]

19
20
21
22
23
24
25
26

But this method only governs ***the FDA's*** testing of samples to determine whether a company has complied with relevant regulations or should be subject to an enforcement action. FDA's regulatory comments on the final rule make this point abundantly clear: FDA stated that "Section 101.9(g) sets out the methods ***that the agency will use*** for compliance determinations." Food Labeling; General Provisions; Nutrition Labeling; Petitions, Definition of Terms; Definitions of

27
28

---

[2] The testing results attached to CPA's Amended Complaint do identify the specific products that were tested, the lot number of those Products, and the method used in testing, which frequently is a method prescribed by "AOAC."

Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302, 2311 (Jan. 1993).

This method, which FDA uses to determine whether it should bring an enforcement action, doesn't govern whether CPA has adequately alleged under California consumer protection law that Bowman has overstated the protein content of its Products and therefore violated FDA's labelling regulations—which is the only issue before this Court on a motion to dismiss. It was for this reason that a judge in this district rejected the exact argument Bowmar is making, in a case alleging that a defendant had overstated protein values on its labelling. In that case, "Defendant challenge[d] the allegations [of overinflated protein content] because they do not identify the type of testing Labdoor and the 'independent testing' employed." *Clay v. Cytosport, Inc.*, No. 15–cv–165 L(DHB), 2015 WL 5007884, at *4 (Aug. 19, 2015 S.D. Cal.). But Judge Lorenz rejected this argument because it presented issues of proof "not appropriate for a motion to dismiss." *Id.*

The critical point on a motion to dismiss, Judge Lorenz noted, wasn't whether plaintiff's allegations were based on some particular kind of sampling, but whether the allegations as a whole raised a plausible claim of falsity or deception:

> Plaintiffs' position is that the protein labeling and content combinations Defendant uses violate the FDCA, and that this position is supported by Labdoor and "independent" testing results. In fact, Defendant does not dispute that these allegations give notice to Plaintiffs' position. Thus, the Court finds that the allegations are sufficient to state a plausible claim.

*Id.* at *3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Multiple other courts have taken a similar approach to Judge Lorenz's, focusing on the "modest" burden of adequate pleading, *see Bennett*, 520 U.S. at 171, that a plaintiff must meet to win a motion to dismiss. *See, e.g.*, *Amavizca v. Nutra Manufacturing, LLC*, No. 8:20-cv-01324-RGK-MAA, 2020 WL 8837145, at *5 (Oct. 20, 2020 C.D. Cal.) ("To require Plaintiff to specifically allege testing in conformance with 21 C.F.R. § 101.9(g) would be tantamount to requiring Plaintiff 'to provide evidence in support of [his] claims at the pleading stage.'") (quoting *Durnford*, *supra*); *Diamos v. Walmart Inc.*, No. 2:19-cv-05526-SVW-GJS, 2020 WL 1942322, at *3 (Jan. 9, 2020 C.D. Cal.) ("failure to specifically allege testing in conformance with 21 C.F.R. § 101.9(g) does not expressly preempt such a claim at the pleading stage"); *Jackson-Mau v. Walgreen Co.*, No. 1: 18-cv-4868 (FB)(VMS), 2019 WL 5653757, at *2 (Oct. 31, 2019 E.D.N.Y.) ("independent testing results … are sufficient to survive dismissal if they allow the court to reasonably infer the defendant's liability"); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15-cv-5070, 2017 WL 2215025 at *12 (May 19, 2017 N.D. Ill.) (same); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016) (same); *Gubala v. HBS International Corp.*, 2016 WL 2344583, at *4 (May 4, 2016 N.D. Ill.) (same); *Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *7 (E.D. Cal. Dec. 24, 2015) (holding that Plaintiff's non-conforming testing is merely intended to allow the Court to "infer that tests conducted in compliance with the [FDA's] 12-sample methodology would support Plaintiff's allegations that the Product is mislabeled"); *Hackman v. ONE Brands, LLC*, No. 2018-CA-005423 (June 18, 2019 D.C. Super. Ct.) (same).

No appellate court has ever addressed the issue whether consumer protection claims are preempted for failure to plead testing consistent with Section 101.9(g)(2). But several district courts in this Circuit, including in *Amavizca* and *Diamos, supra,* have relied on the Ninth Circuit's analysis in *Durnford v. MusclePharm Corp*., 907 F.3d 595 (9th Cir. 2018). There, the Circuit declined to "address whether plaintiffs are ever required to allege, at the pleading stage, that there are tests contradicting the nutrition panel that comply with the FDA's testing protocols" as set forth in Section 101.9(g)(2). *Id*. at 604 n.8. But in discussing this issue, the Ninth Circuit did "note, however, that plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage, nor are they required to plead the 'probability' of their entitlement to relief." *Id*. (citations omitted). These observations are consistent with Judge Lorenz's reasoning in *Cytosport* and the other cases cited herein, and suggest that the Ninth Circuit would likely reject the preemption argument that Bowmar has advanced.[3]

Notably, at least one of the cases that Bowmar relies on at pages 6-8 of its Memorandum, *Vital v. One World Company, LLC*, No.: SACV 12–00314–CJC(MLGx), 2012 WL 13029487, at *1 (Nov. 30, 2012 C.D. Cal.), was decided on a motion for summary judgment—which actually makes the case *consistent* with the notion that dismissal on preemption grounds under Rule 12 is inappropriate simply for failure to plead testing in conformity with Section 101.9(g)(2). And a second, *Rubio v. Orgain, Inc*., No. 2:18-CV-02237-MWF (SHKx), 2019 WL 1578379 (Mar. 5, 2019 C.D. Cal.) has been criticized by judges

---

[3] Further, CPA has continued testing additional lots of Products, and can show that the results of additional testing remain consistent, even across multiple lots.

within the same district, who note that it appears "to be in tension with the proposition 'that plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage[.]'" *Amavizca*, 2020 WL 8837145, at *5 (quoting *Durnford*, *supra*). See also *Diamos*, 2020 WL 1942322, at *3 (rejecting *Rubio*).

This Court should follow Judge Lorenz's lead in *Cytosport*—and all the other cases cited herein—and find that these claims are not preempted because CPA failed to allege that its testing conformed to Section 101.9(g)(2). The issue on any motion to dismiss is whether a plaintiff has plausibly pleaded entitlement to relief. Determining "plausibility" does not permit a court to "decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss, the plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together." *Id*. In other words, "the court will ask itself could these things have happened, not did they happen." *Id*. The independent testing alleged by CPA is enough to establish that it is more than plausible that Bowmar's protein claims are inflated and deceptive and fail to comply with federal labelling requirements—which meets the modest pleading burden imposed by Rule 12.

### C.   Bowmar's argument would place a higher burden on plaintiffs to show noncompliance than on Bowmar to show compliance.

This conclusion is strengthened by the startling fact—unmentioned by Bowmar anywhere in its motion—that it isn't required to test its *own* samples using the 12-sample method described in Section 101.9(g)(2). When a

manufacturer like Bowmar tests its products to determine whether it has complied with FDA rules about nutrient content claims, it "may use nonofficial methods of analysis to establish nutrient content label values" so long as they "ensure the validity of their methods with respect to applicability, specificity, sensitivity, accuracy, precision, and detectability." 58 Fed. Reg. at 2311. That is, a manufacturer is "not preclude[d] ... from using alternative analytical methods for determining nutrient content label values" such as the amount of protein in a serving of Bowmar's products. *Id*.

This is a key point: Bowmar argues that CPA ***must*** use a 12-sample testing method when alleging that Bowmar has inflated the protein content of its Products. But FDA regulations make clear that Bowmar itself is not required to use this 12-sample method when it determines—and certifies under penalty of law to the FDA—whether it has accurately stated the protein content of its Products on its labels.

What is good for the goose is good for the gander, particularly when it's the goose (*i.e.*, Bowmar) that bears the heavy burden of demonstrating preemption. *See Bruesewitz*, 562 U.S. at 227. If Bowmar "can show regulatory compliance using other reliable methods, then it would make sense that Plaintiff should similarly be able to show non-compliance using other reliable methods." *Gubala*, 2016 WL 1019794, at *9. Accepting Bowmar's argument would require the Court to hold that a consumer advocacy plaintiff is held to a higher testing standard to determine compliance with food labelling requirements than *the food manufacturer itself*. This simply cannot be the law.

The fact that CPA has not alleged that its testing used the method described in Section 101.9(g)(2) does not change the fact that it has adequately alleged that Bowmar has overinflated (in some cases, by more than 100 percent) the protein content of its Products. That is all that it is required to show plausible entitlement to relief at this stage of this case.

## CONCLUSION

Considering the foregoing, the motion to dismiss should be denied or, in the alternative, CPA should be granted leave to amend.

Respectfully submitted,

Dated: May 17, 2021

CHARLES C. WELLER, APC

By:     /s/ *Charles C. Weller*

CHARLES C. WELLER
Attorney for Plaintiff

Charles C. Weller (SBN: 207034)
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

# CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

By:     /s/ *Charles C. Weller*

CHARLES C. WELLER
Attorney for Plaintiff