Matthew R. Orr, Bar No. 209675
  morr@calljensen.com
William P. Cole, Bar No. 186772
  wcole@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:  (949) 717-3100

Attorneys for Defendant Bowmar Nutrition, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER PRODUCTS ASSOCIATION, INC., a Washington, D.C. nonprofit corporation, on behalf of the general public, | Case No.  3:21-cv-00596-W-MDD |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| BOWMAR NUTRITION, LLC, an Iowa limited liability company, | Date:   June 7, 2021 Hon. Thomas J. Whelan |
| Defendant. | |
| | Complaint Filed:   April 6, 2021 Trial Date:   None Set |

BOW03-01:3049494_1:5-28-21

- 1 -

CALL & JENSEN

I.      **INTRODUCTION**

Plaintiff Consumer Protection Association's (CPA) response to Bowmar's motion to dismiss is to fall on its sword and contend that somehow its whole litigation foray has been a big mistake. Despite its plain allegations to the contrary, CPA stubbornly contends its Complaint does not seek relief on behalf of anyone other than itself, and that the statement in the First Amended Complaint's (FAC) caption that it brings this case "on behalf of the general public" is simply a stray and misunderstood comment, not part of the pleading. CPA acts surprised that Bowmar imagined CPA was suing to recover anything for anyone other than itself.

CPA's gaslighting ignores the Complaint's repeated express references to seeking restitution and disgorgement on behalf of consumers, and the lack of any claims seeking legal damages in CPA's own right. What is clear at this point is that CPA has wasted both this Court's and Bowmar's resources pursuing claims that it should have never asserted. If CPA merely seeks to recover for its own direct injury (i.e., CPA's purported "diverted" resources)—CPA should have promptly dismissed its claims for restitution or disgorgement to consumers.

Additionally, CPA has failed to adequately allege even organizational standing. It certainly states no claim to recover purported damages to itself. It also misconstrues or ignores the defects in its unjust enrichment and product testing allegations.

For all of these reasons, and as stated more fully below, the Court should grant the Motion to Dismiss.

II.     **LEGAL ARGUMENT**

A.      **CPA Concedes It Cannot Seek Restitution or Disgorgement on Behalf of Third Parties**

CPA's argument that the FAC seeks only relief on behalf of CPA itself, and does not seek any relief for the general public or third parties, is simply false. The FAC repeatedly states that CPA "seeks an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from the sale of the Products[.]" (FAC ¶¶ 48, 57,

66.) The FAC states that "[t]he laws of the 50 states and Washington, D.C., do not differ materially as to the elements of unjust enrichment" and that Defendant "deceived *consumers*" and "*consumers* conferred a benefit on Defendant by purchasing the Products, including an effective premium, above the true value of the Products.' (*Id.* ¶¶ 75-78, emphasis added.) The FAC alleges that "Defendant continues to possess money paid by consumers to which Defendant is not entitled" and that CPA "seeks disgorgement" of those gains. (*Id.* ¶¶ 79-81.) The FAC obviously, repeatedly and improperly seeks restitution or disgorgement on behalf of *consumers*.

In its opposition, CPA has not made any effort to establish, or even argue, that it can bring a non-class case seeking restitution or disgorgement for third parties. As established in the moving papers, Proposition 64 eliminated non-class "representative actions" under the UCL and FAL. (Doc. 6-1, ECF p.7:8-19.) Accordingly, regardless of CPA's "organizational standing" arguments (addressed hereafter), the FAC fails to state any claim for restitution or disgorgement on behalf of consumers or the public, and the Court should dismiss any such claim.

### B. CPA's "Organization Standing" Argument is a Red Herring

Because the entire gist of the FAC is the seeking of relief on behalf of third-party consumers, Bowmar assumed CPA may be trying to claim some type of associational standing. The moving papers established that CPA failed to allege any facts establishing associational standing. In its opposition, CPA has abandoned that pursuit, and instead introduces a red herring: it argues it has "organizational standing" and that it "has brought suit seeking *redress of direct injury* in fact in the form of organizational resources diverted to combat Bowmar's blatant falsehoods." (Doc. 7, ECF p. 16:14-15 (emphasis added).) In other words, CPA now claims it is seeking to recover the resources *it* diverted to "investigate" and pursue this lawsuit.

There are several problems with this "organizational standing" theory. First, standing is "claim- and relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." *In re Adobe Systems,*

REPLY IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1218 (N.D. Cal. 2014); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press" and "[w]e have insisted . . . that a plaintiff must demonstrate standing separately for each form of relief sought"). Even assuming CPA had organizational standing to pursue its own damages, it has no standing to seek restitution (or any other relief) for third parties, and any such claim must be dismissed.

Second, the FAC nowhere alleges that CPA seeks monetary damages for its purported "direct injury." *The FAC does not include any claim for damages at all*. The prayer for relief also makes no reference to damages. The only claims asserted in the FAC are UCL, FAL, and unjust enrichment claims. Those are all *equitable* claims; none of them provides for an award of damages. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) (the UCL and FAL provide a private party with only two potential remedies: an injunction and restitution); *Bank of the West v. Sup. Ct. (Industrial Indem. Co.*), 2 Cal.4th 1254, 1266 (1992) (neither actual nor compensatory damages may be awarded under the UCL); *1617 Westcliff LLC v. Wells Fargo Bank N.A.*, 686 Fed. Appx. 411, 415 n. 5 (9th Cir. Apr. 3, 2017) (unjust enrichment is "an equitable cause of action with restitution as a remedy"); *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996) ("an individual may be required to make restitution if he is unjustly enrichment at the expense of another"). Thus, even assuming the FAC sought compensation to CPA for the resources it "diverted" from its "mission," that compensation would be a claim for *damages*, not restitution. The FAC, of course, does not contain any factual allegation that CPA's "diversion" of resources unjustly enriched Bowmar or provided property to Bowmar that it could be required to restore to CPA.

Third, CPA also lacks any standing to pursue injunctive relief. Again, standing is not only claim but relief specific. *DaimlerChrysler*, 547 U.S. at 352. To have Article III standing to seek injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d

CALL&
JENSEN

939, 946 (9th Cir. 2011). Specifically, a plaintiff "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized . . . actual and imminent . . . [and] fairly traceable to the challenged action of the defendant." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). CPA does not allege that it was ever deceived by Bowmar's marketing, let alone that it has any intention of purchasing any of the challenged products in the future. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018). The FAC lacks any factual allegations establishing that *CPA* faces "a real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946.

Finally, while CPA's pivot to "organizational standing" is DOA (for all the reasons just explained), the fact is that CPA has failed to adequately allege organizational standing in any event. CPA alleges that it diverted resources to test Bowmar's products and bring this lawsuit. The testing, of course, was merely a pre-litigation expense. "Plaintiffs cannot establish standing to pursue a UCL claim based on expenses incurred in order to bring their UCL claim. If they could, the requirement that individuals show they lost money or property 'as a result' of the challenged practice in order to have standing to sue under the UCL would be meaningless." *Robinson v. HSBC Bank USA*, 732 F.Supp.2d 976, 989 (N.D. Cal. 2010); *accord Two Jinn, Inc. v. Government Payment Service, Inc.*, 233 Cal. App. 4th 1321, 1334 (2015) ("*Havens* does not hold or intimate that a party can manufacture an economic injury by incurring investigation costs to generate evidence for its lawsuit").

Plaintiff also vaguely alleges it expended resources "educating the public" about Bowmar's allegedly false advertising. "Educating," or threatening to "educate" the public if a target of litigation does not pay a settlement ransom, would not be injury in fact. In any event, CPA's bare-bones allegation of "educating" does not plausibly establish organizational standing. To establish organizational standing (also known as "direct standing"), the organization's diversion of resources must be significant enough to have "perceptibly impaired" its ability to carry out its mission. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013). An organization "cannot manufacture the injury by

CALL& JENSEN

incurring litigation costs or simply choosing to spend money to fix a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* (citing *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). CPA does not allege what resources it actually expended and, for good reason, does not explain what form the "education" supposedly took.[1] Furthermore, the FAC does not allege facts showing that CPA would have "suffered some other injury if had not diverted resources" to such purported education. *Id.* CPA also fails to allege facts showing that the unidentified education it supposedly provided "perceptibly impaired" its ability to carry out its mission.

### C.   CPA Fails to State a Claim for Unjust Enrichment

Even apart from standing problems, the unjust enrichment claim fails. CPA contends that a party can plead an unjust enrichment claim as an alternative to legal remedies, in case the Court later decides the legal remedies are inadequate. The argument is a non sequitur. Bowmar never argued that the Court should dismiss the unjust enrichment claim because CPA's legal remedies are adequate. Rather, Bowmar argued that CPA failed to state an unjust enrichment claim *at all*. (Doc. 6-1, ECF p. 9:11-10:6.) Bowmar demonstrated that the FAC fails to allege facts establishing that *CPA* conferred any benefit upon Bowmar through mistake, fraud, coercion or request. (*Id.*) CPA has not even attempted to address that defect, and therefore concedes it. The Court should dismiss the unjust enrichment claim.[2]

---

[1] Nor is soliciting clients for litigation "educating the public"; it is merely a pre-litigation expense. Tellingly, CPA's website page regarding Bowmar's products is expressly identified as a "PAID ATTORNEY ADVERTISEMENT." https://cpa501c3.org/bowmar-nutrition-high-protein-nut-butters-lawsuit. Not coincidentally, earlier this week CPA's counsel filed a backup class action lawsuit against Bowmar in the Central District of California. *See Deana Lozano, individually and on behalf of all those similarly situated, v. Bowmar Nutrition, LLC*, Case No. 2:21-cv-04296-MCS-KS.

[2] Also, while beside the point, CPA erroneously contends it has "explicitly pleaded remedies at law on all of its substantive claims." (Doc. 7, ECF p. 19:21.) In fact, CPA has not asserted even a single claim for a legal remedy. As noted, the UCL, FAL and unjust enrichment claims provide only for equitable relief.

CALL & JENSEN

1
2

**D.      All of CPA's Claims Fail Because the FAC Does Not Establish Testing Per FDA Requirements, But Instead Establishes Preemption**

3
4
5

The FAC does not allege facts establishing that the nutrient contents were tested in accordance with the FDA's mandated protocols, but instead establishes preemption. This is fatal.

6
7
8
9
10
11
12
13

First, CPA does not dispute that the testing certificates attached to the FAC show only one sample of the various products was tested, not "a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases[.]" 21 C.F.R. § 101.9(g)(2). The testing certificates are *incorporated as part of CPA's complaint.* (Doc. 3, Ex. A.) Thus, this is not even a case in which a plaintiff has alleged a product does not contain enough of a particular nutrient, but does not allege anything about the method of testing. To the contrary, this case involves CPA expressly alleging facts *establishing* the claims are preempted. In *Rubio v. Orgain, Inc.*, the court explained:

14
15
16
17
18
19
20

> In any event, at this stage, the Court need not determine whether a plaintiff, to withstand dismissal on the basis of preemption, must in *all* cases allege compliance with section 101.9(g)(2). Because Plaintiffs have attached as exhibits to the FAC copies of certificates of analysis of the RTD Products showing the results on which they rely, plaintiffs "appear to have pleaded facts demonstrating preemption." [Citations.] "Nothing in the reports suggests that the 12-sample method required by § 101.9(g)(2) was employed. Under such circumstances, the Court finds the remaining claims, as pleaded, are preempted."

21
22

*Rubio*, No. EDCV 18-2237-MWF (SHKx), 2019 WL 1578379, at *4 (C.D. Cal. Mar. 5, 2019) (citations omitted).

23
24
25
26
27
28

Second, CPA's reliance on *Amavizca v. Nutra Manufacturing, LLC*, No. 8:20-cv-01324-RGK-MAA, 2020 WL 8837145, at *5 (C.D. Cal. Oct. 20, 2020), and *Diamos v. Walmart Inc.*, No. 2:19-cv-05526-SVW-GJS, 2020 WL 1942322, at *3 (C.D. Cal. Jan. 9, 2020), is misplaced. Neither *Amavizca* nor *Diamos* involved a claim that the amount of the ingredient contained in a product *deviated* from the label claim; instead, in both cases the plaintiffs claimed the product did not contain the ingredient *at all*. *See Amavizca*, 2020

CALL&
JENSEN
A Professional Corporation

REPLY IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

WL 8837145, at *5 (distinguishing *Amavizca* and *Diamos* from *Rubio* on the ground that, unlike in *Rubio*, the plaintiffs' claims were "based on the complete absence of the advertised compound from the tested bottle[s]") (internal quotations and citation omitted). This case is like *Rubio*, not *Amavizca* or *Diamos*.

Third, for several reasons, the Court should not find *Clay v. Cytosport, Inc.*, No. 15-cv-165 L(DHB), 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015), persuasive here. In *Clay*, the plaintiffs did not identify the testing methodology used, and thus did not plead facts *establishing* preemption, as did the plaintiffs in *Rubio* and as did CPA here. *See Clay*, 2015 WL 5007884, at *2-3 (plaintiffs did not allege the testing methodology used). Additionally, while *Clay* correctly recognized that the plaintiffs could not establish any liability without showing a deficient nutrient value per the "composite of twelve subsamples" methodology required by the FDA regulations,[3] *Clay* incorrectly analyzed Rule 8's plausibility requirement vis-à-vis the FDA regulations. The Supreme Court has made clear what the plausibility standard requires: "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Because CPA alleged testing only of single product samples, even assuming the allegations were true, the allegations would establish only the mere *possibility* of a violation: a deficient test result from a single sample is, at best, "merely consistent with" the *possibility* that a proper sampling under section 101.9(g)(2) would show a deficiency. Thus, CPA's allegations raise only a speculative right to relief, and stop "short of the line" required for plausibility. *See Vital v. One World Company, LLC*, No. SACV1200314CJCMLGX, 2012 WL 13029487, at *5 (C.D. Cal., Nov. 30, 2012) ("it is impossible to determine whether a company is in compliance with the Food Labeling Rule by testing less than twelve products from twelve different shipping cases"). To the extent any other testing

---

[3] *Clay*, 2015 WL 5007884, at *3 ("[t]he Court agrees with Defendant that [the 12-sample methodology of section 101.9(g)] is the standard that the FDA holds Defendant to").

CALL&
JENSEN

1  methodology is used, "no matter how good the company believes its testing method to
2  be, it will not be in compliance with the Food Labeling Rule if it does not pass the test
3  set forth in [Section] 101.9(g)." *Vital,* 2012 WL 13029487, at *5.

4      *Clay* also did not consider or address Rule 9's particularity requirement, which
5  applies the CPA's UCL and FAL claims. *See Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d
6  1097, 1103 (9th Cir. 2003); *Jerome's Furniture Warehouse v. Ashley Furniture
7  Industries, Inc.*, No. 20CV1765-GPC, 2021 WL 1541649, at *3 (S.D. Cal. Apr. 20, 2021).
8  To plead fraud with particularity, CPA must allege with particularity the facts establishing
9  the challenged nutrient contents fall below the stated amounts as determined by the FDA-
10  mandated methodology. CPA failed to plead any such facts, let alone with particularity.

11      Finally, CPA contends that section 101.9(g)(2) applies only to FDA compliance
12  actions. It misses the point. This case also concerns *compliance*. Because of FDA
13  preemption, no state statutory or common law claims can impose any requirement for
14  labeling different from the FDA compliance requirement. CPA cites *Gubala v. HBS
15  International Corp.*, No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016), but far
16  from making any finding that section 101.9(g)(2) does not set the liability standard, the
17  *Gubala* court merely expressed *confusion. Id.* at *9 ("it is simply not clear to the Court at
18  this point in time"). Other courts have not been confused by this legal question, including
19  even the other cases upon which CPA relies. *See, e.g., Durnford v. MusclePharm Corp.*,
20  907 F.3d 595, 602 (9th Cir. 2018) (holding section 101.9(g)(2) is "not just an internal
21  guidance, it is an interpretation of the statutory provision requiring that manufacturers
22  disclose a product's protein content, a concept that requires federal agency clarification
23  if there is to be national uniformity in labeling"); *Rubio*, 2019 WL 1578379, at *3; *Clay*,
24  2015 WL 5007884, at *3; *Vital*, 2012 WL 13029487, at *5.

25      For all the foregoing reasons, CPA fails to state any valid claims.

## III.  CONCLUSION

27      CPA attempted to bring a non-class representative action seeking relief for
28  "consumers." Because the law unequivocally prohibits such suits, CPA pivoted to

REPLY IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT

1   claiming it seeks only its own damages, even though the FAC does not include a single

2   cause of action or claim for damages. The Court should grant the motion to dismiss.

3

4   Dated:  May 28, 2021                    CALL & JENSEN
                                            A Professional Corporation
5                                           Matthew R. Orr
                                            William P. Cole
6

7                                           By:/s/ William P. Cole
                                                William P. Cole

8                                           Attorneys for Defendant Bowmar Nutrition, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2021, I electronically filed the foregoing document described as **REPLY IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

_/s/William P. Cole_____
William P. Cole

REPLY IN SUPPORT OF DEFENDANT BOWMAR NUTRITION, LLC'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT