Charles C. Weller (SBN: 207034)
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Consumer Products Association

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER PRODUCTS ASSOCIATION,<br><br>    *Plaintiff*,<br><br>vs.<br><br>BOWMAR NUTRITION LLC,<br><br>    *Defendant*. | Case No. 3:21-cv-00596-W-MDD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 11 MOTION FOR SANCTIONS AND REQUEST FOR COUNTER-SANCTIONS UNDER RULE 11(b)**<br><br>Hon. Thomas J. Whelan<br><br>Complaint Filed: April 6, 2021<br>Trial Date: None Set |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES ......................................................... iii

INTRODUCTION........................................................................1

STANDARD OF REVIEW ...........................................................3

ARGUMENT ...............................................................................3

    I.      Bowmar's standing argument is directly contradicted by
           on-point and binding case law. ..................................3

    II.     A nonprofit has standing to allege injury to its charitable
           mission under the UCL and FAL...............................5

    III.    Bowmar was on notice of the lack of support for
           its argument before it filed this frivolous motion. ....................10

    IV.    Bowmar should be sanctioned for bringing a
           frivolous Rule 11 motion. ..........................................14

CONCLUSION ...........................................................................17

# TABLE OF AUTHORITIES

## Cases

*Animal Legal Def. Fund v. Great Bull Run, LLC,*
     No. 14-cv-01171, 2014 WL 2568685 (N.D. Cal. 2014) .............................. 8

*Animal Legal Def. Fund v. HVFG LLC,*
     No. C 12–05809, 2013 WL 3242244 (N.D. Cal. 2013) .......................... 8

*Animal Legal Def. Fund v. LT Napa Partners LLC,*
     234 Cal. App. 4th 1270 (2015) ........................................................ 9

*Borowski v. DePuy, a Div. of Boehringer Mannheim Co.,*
     850 F.2d 297 (7th Cir. 1988) ................................................... 2, 15

*Christian v. Mattel, Inc.,*
     286 F.3d 1118 (9th Cir. 2002) ................................................. 3, 17

*Draper & Kramer, Inc. v. Baskin-Robbins, Inc.,*
     690 F. Supp. 728 (N.D. Ill. 1988) ............................................ 1, 14

*Estate of Blue,*
     120 F.3d 982 (9th Cir. 1997) ..................................................... 15

*Fair Hous. Council v. Roommate.com LLC,*
     666 F.3d 1216 (9th Cir. 2012) .................................................. 4, 5

*Fair Hous. of Marin v. Combs,*
     285 F.3d 899 (9th Cir. 2002) ......................................................... 5

*Hall v. Time,*
     158 Cal. App. 4th 847 (2008) ........................................................ 9

*Havens Realty Corp. v. Coleman,*
     455 U.S. 363 (1982) ................................................................. 4, 5

*In re Keegan Mgmt. Co. Sec. Litig.,*
     78 F.3d 431 (9th Cir. 1996) ........................................................... 3

*Judin v. United States,*
     34 Fed. Cl. 483 (Fed. Cl. 1995) .................................................... 14

*Kwikset Corp. v. Superior Court,*
     51 Cal. 4th 310 (2011) .................................................................. 9

*Moeck v. Pleasant Valley Sch. Dist.,*
     844 F.3d 387 (3d Cir. 2016) ......................................................... 16

-iii-

*Oganyan v. Square Two Financial*,
    2012 WL 4466607 (C.D. Cal. 2012) ............................................................ 15

*Organic Products Association v. Sanderson Farms, Inc.*,
    284 F. Supp. 3d 1005 (N.D. Cal. 2018) ............................................... passim

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001) ........................................................................ 14

*People for the Ethical Treatment of Animals v. Whole Foods Market Cal., Inc.*,
    No. 15-cv-04301, 2016 WL 362229 (N.D. Cal. 2016) ................................. 8

*S. Cal. Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*,
    426 F. Supp. 2d 1061 (C.D. Cal. 2005) .................................................. 9, 10

*Safe-Strap Co., Inc. v. Koala Corp.*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) ........................................................ 14

*Smith v. Pac. Props. & Develop. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) ...................................................................... 5

*Truong v. N.Y. Hotel and Motel Trades Council, AFL-CIO*,
    603 F. Supp. 2d 742 (S.D.N.Y. 2009) .......................................................... 2

**<u>Rules</u>**

Fed. R. Civ. P. 11 ............................................................................................. 6, 17

**<u>Treatises</u>**

5A Charles Alan Wright and Arthur R. Miller,
    *Federal Practice and Procedure* § 1321 (4th ed. 2020) ............................ 15

1

**INTRODUCTION**

2

"Rule 11 is not a toy." *Draper & Kramer, Inc. v. Baskin-Robbins, Inc*., 690

3

4

F. Supp. 728, 732 (N.D. Ill. 1988). It is also not a tool for papering over counsel's

5

mistakes. Yet Plaintiff Bowmar Nutrition, LLC has brought this motion for the

6

sole and apparent purpose of covering up its counsel's elementary blunder. This

7

Court should sanction Bowmar for a bad-faith abuse of Rule 11.

8

Bowmar moved to dismiss the Amended Complaint filed by Consumer

9

Products Association, arguing that CPA had brought an impermissible "private

10

attorney general" action under California state consumer protection law. The

11

problem with this motion, as CPA's opposition (Dkt. Entry 7) made abundantly

12

13

clear, was that CPA *didn't* bring a "private attorney general" action. (The words

14

do not appear anywhere in CPA's complaint, as just a start.) Instead, CPA's

15

standing rests on money and property lost when it was diverted from its charitable

16

mission by Bowmar's blatant falsehoods about the protein content of its powders

17

and other food products.

18

Bowmar scoffs at this standing allegation as "particularly frivolous."

19

20

Bowmar Memo. at 3. But this has been a recognized form of standing for more

21

than four decades, affirmed repeatedly by the U.S. Supreme Court and the Ninth

22

Circuit. As recently as 2018, it was affirmed again in a false labelling case brought

23

under the exact California consumer protection statutes—the Unfair Competition

24

Law ("UCL") and the False Advertising Law ("FAL")—that CPA alleges here.

25

That case was *Organic Products Association v. Sanderson Farms, Inc*., 284 F.

26

27

Supp. 3d 1005 (N.D. Cal. 2018). Bowmar doesn't mention *Sanderson Farms* even

28

once in its motion to dismiss papers or in this motion, despite the fact that the case

(1) is directly on point, (2) was discussed at length in CPA's motion to dismiss opposition, and (3) was brought to counsel's attention before this motion was filed.

The reason for Bowmar's silence is clear: *Sanderson Farms* simply demolishes Bowmar's motion to dismiss, and consequently this motion for sanctions. But as discussed further below, it is hardly the only on-point case that does similar violence to Bowmar's specious arguments.

Strip away Bowmar's chest-thumping and it is plain what happened here. Bowmar jumped to conclusions about CPA's complaint and didn't do its research. The motion to dismiss is the product of counsel's error in perception and failure to adequately research CPA's standing averments. That alone can be grounds for imposing Rule 11 sanctions on Bowmar. *See, e.g.*, *Truong v. N.Y. Hotel and Motel Trades Council, AFL-CIO*, 603 F. Supp. 2d 742, 744 (S.D.N.Y. 2009) (imposing sanctions on a party bringing a frivolous Rule 11 motion when it was "obvious from [the party's] papers that his attorneys did not adequately research" the issue presented).

But unlike Bowmar's motion to dismiss, this motion for sanctions was ***not*** a mistake. It is a deliberate misuse of the Rule 11 process, designed to deflect from counsel's errors. Bowmar's memorandum is packed with false contentions and deliberate misreadings of the Amended Complaint. It omits material facts about the meet and confer process that took place. And it continues Bowmar's ongoing "ostrich-like tactic of pretending that potentially dispositive authority against [its] contention does not exist"—which courts have held justifies awarding sanctions to the respondent on a frivolous Rule 11 motion. *Borowski v. DePuy, a Div. of Boehringer Mannheim Co.*, 850 F.2d 297, 304–05 (7th Cir. 1988).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This motion is brought in bad faith and is an abuse of Rule 11. The Court should deny the motion, and sanction Bowmar under Rule 11(b) for wasting the parties' and this Court's time and resources.

## STANDARD OF REVIEW

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996). A Rule 11 motion for sanctions should only be granted where the complaint is legally or factually "baseless" and the attorney did not conduct a "reasonable and competent inquiry" before signing it. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11(b), (c) advisory committee's note to 1993 amendment.

## ARGUMENT

I.  **Bowmar's standing argument is directly contradicted by on-point and binding case law.**

Bowmar argues that CPA's counsel must be sanctioned because "long and clearly-established precedents make it absolutely clear that Plaintiff cannot sue on behalf of the 'general public' in a non-class case." Bowmar Memo. 4. The contention (right or wrong) is irrelevant, because that's not what CPA did.

Instead, as CPA's motion to dismiss opposition (Dkt. Entry 7) makes clear, it has brought suit alleging direct organizational injury because Bowmar's blatant falsehoods diverted it from its charitable mission. CPA became aware of "reports that Bowmar's Products made marketing and nutritional labelling claims that were false and deceptive," including that the products contained far less protein than

was stated on the nutritional label, the front label, and on Bowmar's website. Am. Compl. ¶ 9. Testing revealed that these allegations were true, among other "gross inaccuracies" on Bowmar's labelling. *Id.* ¶¶ 22–33. CPA was thus "diverted from its ordinary course of business" and was forced to "devote[] resources to testing these Products … and in educating the public through" various media, including communiques to members, website notices, and podcasts, "about the false and deceptive claims made by Bowmar." *Id.* ¶ 9. Because of this diversion from its ordinary course of business, CPA "has lost money or property." *Id. See also id.* ¶¶ 41, 50, 59, and 68 (alleging that "[a]s a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions.").[1]

This is sufficient to allege standing. A nonprofit organization has a legally protected interest in pursuing its charitable mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982). When an organization diverts resources to "identify and counteract" unlawful activity that frustrates its mission, resulting in "consequential drain on the organization's resources," there can be "no question that organization has suffered an injury in fact" sufficient "to warrant … invocation of federal-court jurisdiction." *Id.* at 378-79. *See also, e.g.*, *Fair Hous. Council v. Roommate.com LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (nonprofit organizations "investigated … alleged violations and, in response, started new education and outreach campaigns targeted at" conduct, which caused them "to

---

[1] In its reply on the motion to dismiss, Bowmar asserted that "*The FAC does not include any claim for damages at all*." Dkt. Entry 9 at 4 (emphasis in original). In light of these allegations of money and property lost, this assertion is absurd.

divert resources independent of litigation costs and frustrated their central mission") (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)); *Smith v. Pac. Props. & Develop. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) ("[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question.").

In the motion for sanctions, Bowmar's response to this binding precedent is largely to ignore it, while gaslighting the Court with scare quotes:

> And what is the purported "injury" Plaintiff alleges? That it was "diverted from its ordinary course of business" and "devoted resources to testing these Products" and "in educating the public through the news media, through podcasts, and through its own website about the false and deceptive claims."

Bowmar Memo. 5 (citations omitted). To which CPA can only respond: Yes, and that's why standing is adequately alleged here. *See, e.g.*, *Havens Realty*; *Roommate.com*; *Pacific Properties*; and *Sanderson Farms*, cited *supra*.

## II.  A nonprofit has standing to allege injury to its charitable mission under the UCL and FAL.

To the extent Bowmar presents any relevant argument at all, it appears to argue that a nonprofit organization cannot allege organizational standing to challenge a violation of the UCL and FAL, because injury to its charitable mission is not a cognizable injury under those particular statutes. *See* Dkt. Entry 9 at 4. This argument is, in a word, **wrong**. A good clue to the fact that Bowmar knows this argument is wrong is that it has never discussed or even cited *Sanderson Farms*, the recent, on-point federal district court case that says exactly the opposite.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Sanderson Farms*, several nonprofit groups had a charitable mission of "conduct[ing] research, policy, and advocacy work aimed at creating greater transparency around food production and encouraging practices that support a sustainable and healthy natural environment." 284 F. Supp. 3d at 1009. They brought suit under the UCL and the FAL alleging injury to that charitable mission, because the defendant chicken processor had made false statements on its labelling that its chickens were "100% natural," antibiotic-free, and had "no hidden ingredients." *Id*. Like CPA, the plaintiffs alleged that they had direct organizational standing based on diversion from their charitable mission that occurred when they investigated these allegations and took steps to educate the public about the defendant's false statements.

Citing to *Havens Realty*, *Roommate.com*, *Pacific Properties*, and other Ninth Circuit cases, the district judge denied the motion, finding that organizational standing was adequately alleged under the UCL and FAL. *Id*. at 1010–13. Useful for present purposes is a side-by-side comparison of the UCL and FAL standing allegations the district court found adequate in *Sanderson Farms*, and the corresponding allegations made by CPA here:

| "OCA's mission includes promoting the views and interests of organic and socially responsible consumers." *Sanderson Farms*, 284 F. Supp. 3d at 1011. | "CPA is a nonprofit education, advocacy, and membership organization that was founded to educate consumers on the accuracy of nutritional label and marketing claims of consumer products, including protein supplements and replacement foods, and to advocate for accuracy and transparency in food labelling and marketing." Am. Compl. ¶ 7. |
|---|---|

| | |
|---|---|
| "[OCA] pursues this mission by advocating for greater truth and transparency in advertising and labeling of consumer products and calling for the transition away from corporate-controlled agriculture that contributes to growing antibiotic-resistance." *Id.* | CPA "develops educational programs for those members and for consumers generally, on topics such as how to read nutritional labels and the frequency of inaccurate or deceptive statements in marketing and nutritional claims made for consumer products, including protein supplements and replacement foods." *Id.* |
| "OCA alleges its mission is frustrated by Sanderson's marketing materials which give the false impression that Sanderson's products are natural and antibiotic free." *Id.* | "Defendant's unlawful conduct has frustrated CPA's efforts to promote, on behalf of the general public, transparency in the food labelling system." *Id.* ¶¶ 41, 50, 59, 68. |
| "In response, OCA has conducted research into Sanderson's farming practices and advertising, prepared internal memoranda, conducted strategy meetings, and developed and coordinated a multi-organization consumer outreach plan including call-to-action emails and online alerts. OCA has also responded to concerns from consumers and its members related to Sanderson's misrepresentations." *Id.* | "CPA staff have devoted resources to testing these Products, as described herein, and in educating the public through the news media, through podcasts, and through its own website about the false and deceptive claims made by Bowmar concerning the protein content (and other falsely advertised nutritional claims) of these Products." *Id.* ¶ 7. |
| "All of these efforts have required OCA to divert resources and staff time away from its policy and consumer education work on other issues such as soil and water pollution, genetic engineering, and strengthening organic standards." *Id.* | "In this matter, CPA was diverted from its ordinary course of business by reports that Bowmar's Products made marketing and nutritional labelling claims that were false and deceptive. As a result of these false and deceptive claims by Defendant, CPA has suffered injury in fact and has lost money or property." *Id.* ¶ 9. |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 11 MOTION FOR SANCTIONS AND
REQUEST FOR COUNTER-SANCTIONS UNDER RULE 11(b)

Comparing the UCL and FAL standing allegations made by CPA in this case to those the Court found adequate in *Sanderson Farms*, it is clear why Bowmar ignores this case. They are nearly identical. Bowmar doesn't have a credible counterargument that CPA's standing averments are insufficient.

Further, lest the Court think that *Sanderson Farms* broke new ground or is an outlier, it has long been clear (in both federal and California state cases) that nonprofit organizations could plead injury under the UCL and FAL for diversion from their charitable mission. This has been repeatedly affirmed in cases decided after the passage of Proposition 64 in 2004. For example:

- *People for the Ethical Treatment of Animals v. Whole Foods Market Cal., Inc.*, No. 15-cv-04301, 2016 WL 362229, at *3 (N.D. Cal. 2016) (organizational plaintiff successfully alleged standing under the UCL and FAL "because it has diverted resources as a result of Whole Foods' alleged unlawful business practices, which have thwarted PETA's mission," ***even though "PETA is not a customer of Whole Foods"***);

- *Animal Legal Def. Fund v. Great Bull Run, LLC*, No. 14-cv-01171, 2014 WL 2568685, at *6 (N.D. Cal. 2014) ("Organizational plaintiffs have standing under the UCL where they divert resources as a result of a defendant's alleged unlawful business practices.");

- *Animal Legal Def. Fund v. HVFG LLC*, No. C 12–05809, 2013 WL 3242244, at *3 (N.D. Cal. 2013) ("a public advocacy firm such as ALDF can have standing under [the UCL] to challenge a business practice inimical to its

purpose and against which the firm expends its resources, thus reducing the money and property it would otherwise have for other projects");

- *Animal Legal Def. Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th 1270, 1279–80 (2015) (nonprofit advocacy organization had standing under the UCL and "suffered injury in fact and lost money as a result of defendants' conduct in serving foie gras because it 'has diverted significant organizational resources to combat [defendants'] continuing illegal sales of foie gras'");

- *S. Cal. Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) ("the Housing Rights Center has standing [under the UCL] because it presents evidence of actual injury based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here").

Moreover, the continuing viability of this form of direct organizational standing was affirmed in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011), the California Supreme Court case that Bowmar repeatedly cites in support of its specious argument. In *Kwikset*, the Court directed readers to *Hall v. Time*, 158 Cal. App. 4th 847, 854–55 (2008), a case that the Court said "catalogu[ed] some of the various forms of economic injury" that could give rise to claims under the UCL and FAL. *Kwikset*, *supra*. In *Hall*, in the list of exemplar injuries, is the case of the nonprofit housing rights organization that raised a claim under the UCL when it "lost financial resources and diverted staff time investigating case against

-9-

defendants" for unfair business practices. *Hall, supra* (citing *Los Feliz Towers Homeowners Assoc., supra*).[2] So even when it decided *Kwikset*, the California Supreme Court took it for granted that a nonprofit organization could plead direct organizational standing under the UCL and FAL. Bowmar has identified **not a single case** that actually supports the unfounded standing argument in its motion to dismiss.

Bowmar's argument is specious. And it is not hard to find case law that makes clear just how specious Bowmar's argument is. CPA cited much of that case law in its opposition. Bowmar ignores it all, continuing its "ostrich-like tactic of pretending that potentially dispositive authority against [its] contention does not exist." *Borowski, supra*. This refusal to even acknowledge (much less try to distinguish) contrary case law is indicative of Bowmar's bad faith.

## III.  Bowmar was on notice of the lack of support for its argument before it filed this frivolous motion.

However, Bowmar's failure to investigate the governing case law wasn't simply negligence (though it was *at least* that). Instead, Bowmar's failure to

---

[2] Bowmar also makes a throwaway argument that CPA's counsel violated Rule 11 by "signing a complaint asserting an unjust enrichment claim where Plaintiff obviously has no legal basis for an unjust enrichment claim." Bowmar Memo. 6. However, CPA's opposition makes clear that the unjust enrichment claim is "alternative pleading of an equitable remedy … in the event it is determined after discovery that plaintiff lacks an adequate remedy at law" under the UCL and FAL, Dkt. Entry 7 at 13. As cited in CPA's opposition, multiple courts in this district and circuit have held that this kind of alternative pleading is permissible. *Id*. CPA's Amended Complaint "to the extent necessary, pleads this cause of action [*i.e.*, unjust enrichment] in the alternative." Am. Compl. ¶ 74. Once again, Bowmar simply ignores the plain language of the Amended Complaint and all the case law that supports this form of pleading. It does so because it has no credible argument that this alternative pleading is improper.

adequately research the support for its position before filing this motion was clearly **willful**. And Bowmar continues this willful obfuscation by omitting material facts from its description of the meet and confer process. That exchange put Bowmar on notice that (1) its threatened motion for sanctions was baseless and (2) CPA would ask for counter-sanctions.

CPA responded the next day to the draft motion for sanctions that Bowmar sent to the undersigned on April 28, 2021. Citing both *Havens Realty* and *Pacific Properties*, CPA disabused Bowmar that it was bringing a "private attorney general" action. Instead, CPA's counsel stated, Bowmar had alleged standing under the UCL and FAL for "an injury it has directly sustained. This is a well-versed basis for organizational standing." Weller Decl. Exh. A. Counsel continued, reminding Bowmar's counsel that:

> A court in the Northern District of California recently reaffirmed this form of organizational standing in *Organic Consumers Association v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1012 (N.D. Cal. 2018), a suit that brought claims under the UCL and FAL on jurisdictional and standing averments closely resembling those made by CPA here.

*Id*. Finally, the undersigned noted that he "could go on citing directly relevant cases discussing this well-versed form of organizational standing—there are dozens," but hoped that review of *Havens Realty*, *Pacific Properties*, *Sanderson Farms* and other cases cited would "be sufficient to convince you that your threatened Rule 11 motion is frivolous." *Id*. However, if Bowmar moved forward with its frivolous Rule 11 motion, it was "advised that CPA will seek sanctions in the form of its costs and fees related to defending the motion." *Id*.

On May 3, 2021, Bowmar's counsel replied that "[t]here appears to be some cognitive dissonance on CPA's part, as the First Amended Complaint expressly states it is brought 'on behalf of the general public.'" Weller Decl. Exh. B.

Undersigned replied the same day. Weller Decl. Exh. C. Noting that the phrase "on behalf of the general public" appeared in the ***caption*** of the Amended Complaint, he directed Bowmar's counsel to Wright and Miller's definitive treatise, *Federal Practice and Procedure*.[3] Wright and Miller, counsel noted, state that the "contents of the caption usually are not considered a part of the pleader's statement of the claim," and the caption is "not determinative as to … the district court's … subject matter jurisdiction over the claims." *Id*. (quoting 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1321 (4th ed. 2020)). Moreover, even if there is a technical defect in a caption, the method to correct that defect is a motion under Rule 15, not a Rule 12 motion to dismiss, since "a defective caption or even its complete absence is merely a formal error and never should be viewed as a fatal defect, particularly when it can be remedied early in the action." *Id*. These precedents—and many others to the same effect— are discussed at length in CPA's opposition. Dkt. Entry 7 at 9–13.

CPA's counsel again stated that he "trust[s] that this exchange has demonstrated that your threatened motion for sanctions is unfounded" but

---

[3] Notably, the same phrase ("on behalf of the general public") appears in the caption of the complaint in *Sanderson Farms*. *See* Dkt. Entry 1, *Organic Consumers Ass'n. v. Sanderson Farms*, *Inc*., No. 3:17-cv-03592 (N.D. Cal.) (filed June 22, 2017); *id*. Dkt. Entry 31 (Amended Complaint) (filed Aug. 23, 2017). But the defendant and the Court in that case had little trouble recognizing that it is the allegations in a complaint that matter, not stray words in a caption. This is yet another reason Bowmar does all it can to avoid mentioning *Sanderson Farms*.

reiterated "that CPA will seek fees and costs related to defending a motion for sanctions should you nonetheless choose to bring one." Weller Decl. Exh. C.

Whatever misplaced confidence Bowmar had in the legal basis for its arguments on the motion to dismiss should have been put to rest with this exchange. No reasonably competent attorney could read *Havens Realty*, *Pacific Properties*, *Roommate.com*, and *Sanderson Farms*—to say nothing of the "dozens" of other similar cases CPA alluded to, some of which are described in this pleading—and conclude that CPA's standing averments were, as Bowmar's motion snorts, "particularly frivolous." Bowmar Memo. 5. Counsel for Bowmar either didn't read these cases when they were pointed out to him or plunged forward with this motion regardless, as a litigation tactic. Either way, this motion is an abuse of Rule 11.

And it gets worse. In order to give Bowmar one last opportunity to understand just how frivolous a motion for sanctions would be in this case, CPA filed its opposition a week early on May 17, 2021, so that Bowmar's counsel would have it for review before the 21-day "safe harbor" period under Rule 11 had run. Yet even after reading CPA's opposition, with its extensive citations to and discussion of *Havens Realty*, *Pacific Properties*, *Roommate.com*, and *Sanderson Farms*, Bowmar still filed this motion on May 25, 2021. And again, it didn't even mention the latter case. All told, Bowmar was warned three times (the last time in the form of a 22-page opposition brief) that CPA's standing allegations rested on directly on-point, binding, dispositive case law. It ignored those warnings, because it was desperate to divert attention from counsel's blunder in misreading the Amended Complaint.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This motion is frivolous. Bowmar's motive for bringing it is clear: to distract from counsel's misreading of the Complaint and failure to adequately research the law. This is a sanctionable abuse of Rule 11.

## IV.   Bowmar should be sanctioned for bringing a frivolous Rule 11 motion.

A Rule 11 violation is a serious thing, and "an accusation of such wrongdoing is equally serious." *Draper & Kramer,* 690 F. Supp. at 732. Upon the filing of a Rule 11 motion, "the court may award to the prevailing party the reasonable expenses, including attorney's fees incurred for the motion." Fed. R. Civ. P. 11(c)(2) (emphasis added). "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11(b), (c) advisory committee's note to 1993 amendment.[4]

Thus, when a Rule 11 motion itself is not well grounded in fact or law, or is filed for an improper purpose, the court may sanction the *moving* party. *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003). *See also Judin v. United States,* 34 Fed. Cl. 483, 493 (Fed. Cl. 1995) (a court may impose sanctions for a Rule 11 motion that was "filed solely as a litigation tactic," having "the effect of unnecessarily confusing consideration of the real issues").

The Court should impose sanctions for Bowmar's frivolous Rule 11 motion, for three compelling reasons.

---

[4] "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001). In any event, CPA has complied with the safe harbor provision, since it put Bowmar on notice as early as April 29, 2021 that it would seek sanctions if Bowmar filed this motion.

*First*, as shown in the motion to dismiss briefing and in this opposition, it is not simply the case that Bowmar's argument about CPA's standing is a stretch, or rests on a shaky premise. **It's wrong**. Its wrongness was established 40 years ago, in *Havens Realty*; has been repeatedly reaffirmed since in multiple Ninth Circuit, California, and federal district court cases; and was reaffirmed again in 2018 in *Sanderson Farms*. No reasonably competent attorney could investigate this issue and come to any other conclusion. *See Estate of Blue*, 120 F.3d 982, 985 (9th Cir. 1997) (frivolous filings are "those that are both baseless and made without a reasonable and competent inquiry").

Counsel for Bowmar points to his undeniably impressive professional accomplishments. *See* William P. Cole Decl. ¶ 4. But these only make his failure to investigate and act upon these directly on-point, binding, and dispositive cases all the more worthy of sanctions. *See Oganyan v. Square Two Financial*, 2012 WL 4466607, at *2 (C.D. Cal. 2012) ("[S]anctions are proper where it is clear that an attorney failed to conduct even a cursory factual or legal inquiry into the merits of his client's claims, or where an attorney, by virtue of his personal or professional experience, knew or should have known the claims were false or unsupported by law.").

*Second*, Bowmar knew about these precedents. It knew about them because it was told about them, repeatedly, by CPA. Again, a party's "ostrich-like tactic of pretending that potentially dispositive authority against [its] contention does not exist" makes a Rule 11 motion frivolous and is grounds for imposing sanctions on the movant. *Borowski, supra.*

*Third*, this motion was filed for an improper and abusive purpose. Having plainly misread the Amended Complaint and failed to investigate the basis for CPA's standing averments, counsel filed a motion to dismiss that was itself borderline frivolous. Rather than make discretion the better part of valor, however, counsel decided to cover his error by doubling down and filing this motion for sanctions—substituting bravado for careful attention to case law or the plain language of CPA's complaint.

Courts subject Rule 11 motions to "stringent" examination, because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 392 (3d Cir. 2016). This motion is a perfect example of the kind of "abusive" and "dilatory" pretrial tactics that Rule 11 is designed to curb, which needlessly increase costs, waste judicial resources, and foster tensions among the bench and bar.[5]

The purpose of Rule 11 is to reduce frivolous claims, thereby avoiding delay and unnecessary expense. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127

---

[5] As regards the tendency of sanctions motions to increase tensions between the parties, it should be noted that Bowmar's motion to dismiss opened with an unnecessary, unprofessional, and mocking comparison of CPA's counsel to Rip Van Winkle, and closed by asserting (wholly incorrectly, as shown herein) that CPA's supposed "private attorney general" action had been foreclosed since Arnold Schwarzenegger was governor of California. This kind of snideness is hardly conducive to amicable relations—and certainly not when it's followed up by an utterly frivolous sanctions motion.

(9th Cir. 2002). Here, CPA has been forced to research and file this opposition, defending itself against a baseless and frivolous motion for sanctions that Bowmar's counsel knew (or would have known, had he spent a few minutes researching the question) should not have been filed. The Court has been forced to waste judicial resources in reviewing and deciding this frivolous motion. This is precisely the kind of abusive and wasteful tactic that Rule 11(b) seeks to prevent. CPA therefore requests that the Court sanction Bowmar's counsel in the amount of $6,030.00, which constitutes CPA's fees and costs incurred in defending this frivolous motion. Weller Decl. ¶ 12.

## CONCLUSION

Considering the foregoing, the motion for sanctions should be denied, and counsel for Bowmar should be sanctioned under Rule 11(b) in the amount of $6,030.00, for filing a frivolous and unsupported Rule 11 motion for sanctions without adequate research.

Respectfully submitted,

Dated: June 14, 2021          CHARLES C. WELLER, APC

By:    /s/ *Charles C. Weller*

CHARLES C. WELLER
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

By:     /s/ *Charles C. Weller*

CHARLES C. WELLER
Attorney for Plaintiff