Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Consumer Products Association

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER PRODUCTS ASSOCIATION, INC., *a Washington, D.C. nonprofit corporation,* *Plaintiff,* *v.* BOWMAR NUTRITION, LLC, *an Iowa limited liability company*, *Defendant*. | No. 3:21-cv-00596-W-MDD<br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

1. Millions of Americans use protein supplements and food replacements fortified with whey protein to meet weight loss, fitness, and general health goals. These consumers carefully monitor their protein intake for maximum effectiveness in meeting these goals. The accuracy of nutritional labels identifying the protein content of these products is therefore centrally important to satisfying these consumers' needs and expectations.

2.     Whey-fortified protein supplements and food replacement items are available—at a premium price—from Defendant Bowmar Nutrition, LLC ("Bowmar"). The Products manufactured by Bowmar include various powders, bars, frostings, nut spreads, and snacks containing or derived from whey protein isolate and/or concentrate.

3.     But Defendant's whey protein Products provide *substantially less* protein than is stated on the federally mandated nutritional label and represented in Defendant's website and social media advertising. In addition, testing reveals that many other statements on the nutritional labels are false and deceptive, with material differences as to calories, fats, and various nutrients. The labels' claims were false, inaccurate, and misleading, and the labels and advertising violate federal and state laws and regulations requiring accuracy in nutritional labels.

4.     Thousands of consumers, including many in California, purchased the Products in reliance on Defendant's marketing claims, and especially on the false and misleading nutritional label. Defendant reaped millions of dollars in profits from these consumers, who received an inadequate product sold under false pretenses.

5.     Under the laws of the state of California, Defendant has engaged in unfair and deceptive trade practices, sold goods under false pretenses, and defrauded its customers of the benefit of their bargain. This Court should enter a declaratory judgment finding that Defendant violated the California Unfair

Competition Law ("UCL") and False Advertising Law ("FAL") and grant equitable and other relief to the extent permitted by law.

**PARTIES**

6. Plaintiff Consumer Products Association, Inc. ("CPA") is a nonprofit corporation organized under the laws of the District of Columbia. CPA maintains an office in San Diego, California and is registered as a foreign corporation doing business within the state of California. It conducts educational activities in San Diego, California.

7. CPA is a nonprofit education, advocacy, and membership organization that was founded to educate consumers on the content and accuracy of nutritional label and marketing claims of consumer products, including protein supplements and replacement foods, and to advocate for accuracy and transparency in food labelling and marketing. CPA has more than 1300 members, including in California. It develops educational programs for those members and for consumers generally, on topics such as how to read nutritional labels, the frequency of adulterants in consumer products, and the widespread use of inaccurate or deceptive statements in marketing and nutritional claims made for consumer products, including protein supplements and replacement foods.

8. CPA engages in a number of advocacy and education activities related to its mission. For example, CPA publishes (one to two times weekly) updates about issues of concern to its members called "Blog Bites." These short articles

frequently highlight undisclosed or little-known health and safety dangers in consumer products. Recent Blog Bites have focused, *inter alia*, on disclosures of high levels of carcinogenic Bisphenol A (BPA) in thermal paper used for consumer receipts; the frequency of adulterants in honey sold commercially; and how consumers can source locally grown groceries.

9.     CPA also has an "In the News" feature that tracks and comments on news items of interest to its members. It further produces video and audio podcasts and other educational materials for its members of topics of interest. These materials are also made available to the general public through the CPA website and on social media outlets such as YouTube.

10.     CPA also intends to certify "Compliant Companies" that make accurate label claims regarding nutrient content. As part of this program, it intends to test consumer products in order to assess the accuracy of nutrient content labelling and marketing claims, and permit companies to affix a "CPA Certified Label" chyron to their products. This program is an extension of CPA's efforts to educate consumers on consumer labelling accuracy and related issues, by highlighting companies that use best practices in nutrient content formulation, analysis, and labelling.

11.     In this matter, CPA was diverted from its ordinary course of business by reports that Bowmar's Products made marketing and nutritional labelling claims that were false and deceptive, as set forth herein.

12.     These diversions include but are not limited to delaying the rollout and implementation of the "Compliant Companies" program and diverting financial resources that would have been used to test the label compliance of various products in order to award the "CPA Certified Label." That is, because it has had to divert financial resources to test Bowmar products, CPA has been required to delay the "Compliant Companies" program.

13.     In addition, staff time and other resources have been diverted to produce an education campaign to CPA's members and consumers relating to the false and deceptive statements made by Bowmar. For example, staff time has been diverted to developing a Bowmar-specific page on CPA's website, and to produce a video presentation describing the testing that has been performed and the false and deceptive statements made by Bowmar.

14.     These education campaigns were not planned by CPA and to produce these materials, CPA staff have been forced to delay, scrap, or reduce in scope other planned activities. These include delaying Blog Bites items, delaying the rollout of the Compliant Companies program, and reducing the time and other resources available to support daily activities such as making podcasts, writing articles, and monitoring the news media for items of interests to CPA's members.

15.     As a result of these false and deceptive claims by Defendant, CPA's staff time and financial resources have been diverted from their ordinary course of

business and ordinary and planned usage and activities. As such, CPA has suffered injury in fact and has lost money or property, as set forth herein.

16.   Defendant Bowmar Nutrition, LLC is an Iowa limited liability company with its principal place of business in Ankeny, Iowa. On information and belief all members of the LLC reside in Iowa.

## JURISDICTION AND VENUE

17.   This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

18.   This Court has personal jurisdiction over Defendant because this action arises out of and relates to Bowmar Nutrition's contacts with this forum.

19.   Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district; shipping the Products consumers in this district; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

20.   Bowmar Nutrition knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to consumers in this district.

21.   Bowmar Nutrition also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

22.   Venue is proper because CPA conducts business—including its podcasting activities—in this district.

23.   Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

24.   Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

## FACTUAL ALLEGATIONS

25.   Millions of Americans use protein powders and replacement foods to supplement their diet, reduce appetite, and gain muscle. Consumers of protein supplements and other replacement foods carefully measure their protein intake to maximize muscle growth and achieve the most efficient results from their workout and exercise programs. Protein supplements derived from a variety of protein sources are currently available for purchase.

26. Globally, consumer purchases of protein supplements in 2018 were valued at $14 billion. *See* https://www.grandviewresearch.com/industry-analysis/protein-supplements-market.

27. Bowmar Nutrition manufactures, formulates, and/or distributes *inter alia* a line of nut-based spreads, frostings, popcorn snacks, bars, and powders containing whey protein isolate. These whey (*i.e*., dairy-derived) protein Products are designed for use by persons who are concerned about obtaining adequate protein and who want to replace comparable food products with high-protein alternatives.

28. In addition to being advertised as "delicious" and "tasty," these Products are fortified with whey protein and are specifically formulated and advertised as being "high protein." *See, e.g.*, https://bowmarnutrition.com/products/bowmar-almond-butter.[1]

29. The nut-based protein spreads are derived from cashews, hazelnuts, almonds, and peanuts and come in a variety of flavors to entice consumers, including lemon cookie, snickerdoodle, chocolate hazelnut, cornbread, and maple bacon doughnut. Other purportedly high-protein products are formulated with flavors such as ranch (popcorn snacks), coffee cake (bars), pumpkin spice or fruit cereal (powders); and confetti or cream cheese (frosting).

---

[1] All citations to the Bowmar Nutrition website are accurate and reflect the content of that site as of January 8, 2021.

30.   On the front labels of its Products, Bowmar Nutrition specifically advertises these spreads, frostings, powders, and protein bars as providing specific amounts of protein per serving, as shown in the following examples:



Bowmar Nutrition Coffee Cake Protein Bar



Bowmar Butter High Protein Almond Spread Crunch Berry Cereal

Bowmar Butter High Protein Icing Confetti Cake

Bowmar Nutrition Protein Pumpkin Spice Low Fat Low Carb

Bowmar Nutrition Protein Popcorn Delicious High Protein Snack Ranch

31. Defendant also makes claims related to the protein content of the Products on its website, including the following examples:

- 8 grams of protein per serving of popcorn snack, *see* https://bowmarnutrition.com/products/high-protein-popcorn;
- 10 grams of protein per serving of frosting or nut spread, *see, e.g.*, https://bowmarnutrition.com/products/protein-frosting and https://bowmarnutrition.com/products/bowmar-almond-butter;
- 20 grams of protein per protein bar, *see, e.g.*, https://bowmarnutrition.com/products/protein-bars; or

- 22 grams of protein per serving of powder, *see, e.g.*, https://bowmarnutrition.com/products/protein-pumpkin-spice.

32.   These protein claims are repeated on the "Nutrition Facts" portion of the Products' labels, as these examples demonstrate:



Bowmar Butter High Protein Almond Spread Cinnamon Crunch Cereal

Bowmar Nutrition Coffee Cake Protein Bar

Bowmar Nutrition Protein Pumpkin Spice Low Fat Low Carb



Nutrition Facts
9 servings per container
Serving size 2 Tbsp (31g)
Amount Per Serving
Calories 190
% Daily Value*
Total Fat 14g 18%
Saturated Fat 6g 30%
Trans Fat 0g
Cholesterol <5mg 1%
Sodium 30mg 1%
Total Carbohydrate 10g 4%
Dietary Fiber 0g 0%
Total Sugars 3g
Includes 2g Added Sugars 4%
Sugar Alcohol 4g
Protein 10g 20%
Vitamin D 0mcg 0%
Calcium 40mg 4%
Iron 0.6mg 4%
Potassium 160mg 4%
11.20.2020 13:32

Bowmar Butter High Protein Icing Cream Cheese

BOWMAR NUTRITION
PROTEIN POPCORN
RANCH
INGREDIENTS: Non GMO Popcorn, Sunflower Oil, Whey Powder, Ranch Seasoning (Buttermilk Powder, Maltodextrin, Dextrose, Dehydrated Onion, Dehydrated Garlic, Salt, Dehydrated Parsley, Yeast Extract, Natural Flavor, Citric Acid, and Spice.), Sea Salt.
ALLERGENS: Contains Milk. Prepared and Packaged on Shared Equipment that also processes Soy and Peanuts
MANUFACTURED FOR BOWMAR NUTRITION OHIO, USA
SUPPORT@BOWMARSHOP.COM
BOWMARNUTRITION.COM
Facts
servings per container
Serving size 1.1 oz (31g)
Amount Per Serving
Calories 140
% Daily Value*
Total Fat 7g
Saturated Fat 0.5g
Trans Fat 0g
Cholesterol 0mg
Sodium 910mg
Total Carbohydrate 12g
Dietary Fiber 2g
Total Sugars <1g
Includes <1g Added Sugars
Sugar Alcohol 0g
Protein 8g
Vitamin D 0mcg
Calcium 20mg
Iron 0.4mg
Potassium 110mg
10.23.2020 09:36

Bowmar Nutrition Protein Popcorn Delicious High Protein Snack Ranch

-14-
FIRST AMENDED COMPLAINT

33. Bowmar Nutrition also claims that its whey protein Products provide a number of health benefits, including serving as "a healthy meal replacement with a range of amino acids to stimulate muscle growth," https://bowmarnutrition.com/products/protein-pumpkin-spice, or helping to reduce caloric intake because their high protein content will "fill[ ] you up," https://bowmarnutrition.com/products/protein-bars.

34. Defendant has a duty under Federal law to state the nutritional content of its Products accurately in the nutritional facts label and in its marketing materials. All of these representations also constitute an express warranty regarding the Products' protein content.

35. However, based upon testing commissioned by CPA, each serving of the Products contains less than the represented amount of protein. For example:

- The nut spreads contain between 4.76 and 8.67 grams of protein per serving, instead of 10 grams per serving as advertised and represented.
- The coffee cake protein bar, advertised and represented as containing 20 grams of protein per bar, contains 18.69 grams of protein per bar.
- Frostings advertised and represented as containing 10 grams of protein per serving actually contain between 4.03 and 5.21 grams of protein per serving.
- Ranch popcorn snacks advertised and represented as containing 8 grams of protein per serving contain 6.93 grams per serving.

- Protein powders advertised and represented as containing 22 grams per serving contain no more than between 7.77 and 8.09 grams of protein per serving—far less than half the represented protein content.

36. Because the Products are "Class I" foods (*i.e.*, "fortified or fabricated" foods), the Products must contain protein in amounts "at least equal to the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(i). That is, these variances from stated nutritional claims are unlawful under Federal law. In addition, the variances tend to move in one direction, *i.e.*, the Products consistently overstate their actual protein content.

37. In addition, testing by CPA also reveals gross inaccuracies in other claims made on the nutritional labels of the Products.

38. For example, the nutritional label on Bowmar's High Protein Hazelnut Chocolate Spread states that a serving of the Product contains 170 calories, 50 mg of calcium, and 1.5 g of saturated fat. Testing reveals that in fact, each serving contains 199 calories, 28.6 mg of calcium, and 6.96 g of saturated fat. These are material differences for consumers who are watching their weight, seeking to maximize bone density, or trimming saturated fats from their diet. These variances from stated nutritional claims are also unlawful under Federal law.

39. Similar variances in calories, calcium content, and saturated fats are found in other Bowmar Products, including the "Cake Pop" and "Halloween Egg"

flavored cashew spreads and the "Confetti Cake" and "Cream Cheese" flavored icings.

40.   A true and correct copy of the results of Product testing commissioned by CPA is attached hereto as Exhibit A.

41.   Plaintiff reserves the right to amend this Complaint to add further Products as testing continues.

42.   Nutritional labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

43.   Given the Defendant's advertising material and other assurances, consumers would reasonably understand Defendant's statements to mean that each serving of the Product contained the grams of protein and other nutrients per serving that were advertised and represented. These statements were false.

44.   Consumers would reasonably rely on Defendant's statements such that they would not purchase the Products from Defendant if the truth about the Products' protein and other nutrient content were known, or would have only been

willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

45. Consumers especially rely on the nutritional claims made by food product manufacturers such as Bowmar, which explicitly markets its Products to persons who are eating a tailored diet in order to achieve specific nutritional, health, and fitness goals.

## COUNT 1
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.* — "UNFAIR" CONDUCT

46. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

47. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Bowmar Nutrition's actions as set forth herein. As a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions. Defendant's unlawful conduct has frustrated CPA's efforts to promote, on behalf of its members and the general public, transparency in the food labelling system.

48. Bowmar Nutrition's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

49. Bowmar Nutrition's business practices, as alleged herein, are "unfair" because it fails to disclose accurately the protein content provided by the Products.

50. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent.

51. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

52. Defendant publicly disseminated untrue or misleading representations regarding the protein content and other label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

53. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Bowmar Nutrition from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 2**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ*. — "FRAUDULENT" CONDUCT**

54. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

55.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Bowmar Nutrition's actions as set forth above. As a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions. Defendant's unlawful conduct has frustrated CPA's efforts to promote, on behalf of its members and the general public, transparency in the food labelling system.

56.   Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

57.   Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose accurately the protein content of the Products.

58.   As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

59.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical,  oppressive, unscrupulous and/or substantially injurious to its customers.

60.   Defendant publicly disseminated untrue or misleading representations regarding the protein content and other label claims of its Products, which it knew,

or in the exercise of reasonable care should have known, were untrue or misleading.

61. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 3**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.* — "UNLAWFUL" CONDUCT**

62. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

63. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Bowmar Nutrition's actions as set forth above. As a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions. Defendant's unlawful conduct has frustrated CPA's efforts to promote, on behalf of its members and the general public, transparency in the food labelling system.

64. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

65. Defendant's business practices, as alleged herein, are "unlawful" because it fails to disclose accurately the protein content of its Products, in contravention of binding legal requirements governing the accuracy of nutritional labelling.

66. As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

67. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

68. Defendant publicly disseminated untrue or misleading representations regarding the protein content of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

69. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 *ET SEQ*.**

70. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

71. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Bowmar Nutrition's actions as set forth above. As a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions. Defendant's unlawful conduct has frustrated CPA's efforts to promote, on behalf of the general public, transparency in the food labelling system.

72. Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

73. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

74. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading and deceptive as set forth above.

75. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or

misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

76. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**COUNT 5**
**UNJUST ENRICHMENT**

77. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative to the extent the Court determines that CPA lacks an adequate remedy at law.

78. The laws of the 50 states and Washington, D.C., do not differ materially as to the elements of unjust enrichment (aka quasi contract).

79. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the per-serving protein content provided by the Products.

80. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

81. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium, above the true value of the Products. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

82.   Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

83.   Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

84.   Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

85.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Bowmar Nutrition's actions as set forth above. As a direct and proximate result of Defendant's conduct, Plaintiff was forced to divert substantial organizational resources away from its core missions. Defendant's unlawful conduct has frustrated CPA's efforts to promote, on behalf of its members and the general public, transparency in the food labelling system.

**PRAYER FOR RELIEF**

86.   WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a)   Declaring that Defendant violated the UCL and FAL;

b)   Awarding actual and other damages as permitted by law, and/or ordering an accounting by Defendant for any and all profits derived by Defendant

from the unlawful, unfair, and/or fraudulent conduct and/or business practices alleged herein;

   c)   Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

   d)   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff pursuant to California Code of Civil Procedure Section 1021.5 and the common-law private-attorney-general doctrine;

   e)   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

   f)   Such other relief as the Court may deem just and proper.

   TRIAL BY JURY IS DEMANDED.

                           /s/ *Charles C. Weller*
                           Charles C. Weller (Cal. SBN: 207034)
                           Attorney for Plaintiff

                           CHARLES C. WELLER, APC
                           11412 Corley Court
                           San Diego, California 92126
                           Tel: 858.414.7465
                           Fax: 858.300.5137

                           November 12, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

By: /s/ *Charles C. Weller*
CHARLES C. WELLER
Attorney for Plaintiff